[No. 8664. Department Two. June 14, 1910.]

HAROLD OTTOLENGUI, *by His Guardian, Nathan Degginger, Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—STREETS—PRIVATE WAYS—DUTY TO RE-PAIR—CONTRIBUTORY NEGLIGENCE. The driver of an automobile is guilty of contributory negligence in attempting to travel a road, and the road was not a street which the city was bound to repair, where it appears that the way was constructed over private lands by real estate agents who had put up travel signs for their own purposes, that it was five miles from the business portion of the city, in a wild, rough country, and plainly in very bad condition, and that the city had not opened or authorized the opening of the street.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 15, 1909, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action for wrongful death. Affirmed.

*Frank E. Green, George H. Bailey, W. H. B. Thomas, and L. A. Michelson,* for appellant.

*Scott Calhoun* and *James E. Bradford,* for respondent.

MOUNT, J.—This action was brought on behalf of a minor, to recover damages on account of the death of his mother. At the close of plaintiff's evidence, the trial court directed a verdict in favor of the defendant. The plaintiff has appealed.

It appears that on May 27, 1908, one I. E. Moses invited a party of friends to take a ride in an automobile. The party consisted of six persons besides Mr. Moses, who was driving the automobile, the mother of the minor being one

[1]Reported in 109 Pac. 206.

of the party.   They intended to go from the business district
of the city of Seattle to Fort Lawton, which is a military
reservation situated on the western portion of a tract of
land commonly known as Magnolia Bluff.   This bluff is sur-
rounded on three sides by Puget Sound.   The eastern side
is separated from the main part of the city of Seattle by a
depression, which is several hundred feet wide and only a
few feet above sea level.   This depression is known as Inter-
bay, and through it run a number of railway tracks.   A
bridge extends over this depression, connecting the main por-
tion of the city of Seattle with the Magnolia Bluff district.
This bridge is a part of Grand boulevard, one of the public
improved streets of Seattle.   All of Magnolia Bluff, except
the military reservation, is within the corporate limits of
the city.   To drive to Fort Lawton it was necessary to pass
west over Interbay bridge.   Immediately after passing this
bridge, Twentieth avenue west intersects Grand boulevard at
right angles, and runs north and south.   The way to Fort
Lawton turned north.   Mr. Moses was not acquainted with
the road.

On the day stated, after passing over the bridge and ar-
riving at Twentieth avenue west, he saw a signboard on a
post in the street, which sign contained the following direc-
tion:   "To Fort Lawton by Scenic Magnolia Drive," with a
hand indicating a southerly direction upon Twentieth ave-
nue.   Mr. Moses turned southerly along this avenue, and in
a short distance came into Thorndyke avenue, running in a
southwesterly direction.   Following this avenue the party
arrived at the intersection of Ray street.   There the party
found another sign affixed to a pole in the street, reading:
"Scenic Magnolia Drive to Fort Lawton by Way of Mag-
nolia Drive, Thorndyke Avenue," with a hand pointing in
a southeasterly direction.   Up to this point Thorndyke ave-
nue was a graded street, but beyond this point, while there
was a well-defined way, it was a narrow, winding road around
a steep hillside.   This road was rough and muddy, filled with

water, ruts, and stone. The hillsides above and below this road were covered with stumps, brush, and vegetation. The whole country thereabouts was platted into lots, blocks, and streets, but it was a wild country region, without any improvement, and the narrow, winding road was made for the most part over private lands without regard to platted streets. It was about five miles from the business part of the city.

It was apparent that this way was not a city street, and the evidence shows that the city had not opened the same and had refused to do so, and had refused to make improvements thereon. It was also shown that this way was originally a bicycle path, and that certain real estate agents, about a year prior to the date above named, had made the path so that teams might travel over it in order to reach lands beyond, which were offered for sale by such agents. It was also shown that these real estate agents had provided and placed the signboards above mentioned. There is no evidence that the city had authorized the opening of the road or the placing of signboards, but it was shown that the city had refused to open the road or to improve it. Upon one occasion some prisoners had worked for a time upon the road, but the expense of these prisoners was paid for by the real estate agents referred to. When the automobile turned into this road, it was daylight and the condition of the road was plainly apparent.

All the plaintiff's witnesses testified that the condition of the road was very bad, and one witness testified that "for about a block it was terrible. . . . The auto was jumping up and down a good deal." After traveling along this road for a distance of about six hundred feet, the automobile, by reason of the rough condition of the road, ran off the side of the road, overturned, and the appellant's mother was killed. At the point where the automobile turned over, a platted street crossed the road, but this platted street was a steep hillside, covered with vegetation, with no semblance

of an actual street. The trial court was of the opinion that the driver of the automobile was guilty of contributory negligence in attempting to travel the road, and that the road was not a way or street which the city was bound to repair, and for that reason directed a verdict in favor of the defendant.

We are of the opinion that the trial court was right. The way was proven by the plaintiff to be a private way over private lands, which the city would have no right to improve if it so desired. The way was constructed by private parties for their own purposes. The signboards were also placed by the same parties. The city had refused to exercise any control over the way. It is true that the point where the injury occurred was where a platted street intersected the road at right angles, but this platted street had never been opened at that point and, of course, the city was under no obligation to keep it in repair. The accident was an unfortunate one, but the facts show clearly that the city was not responsible for it, because it was under no legal obligation to maintain the way, and had never assumed to do so. To hold the city liable under the facts shown in this case would make it an insurer of the lives and limbs of travelers on byways and private roads within the corporate limits thereof, under all conditions, and in any sort of vehicles. This is not the rule.

The judgment must therefore be affirmed.

RUDKIN, C. J., DUNBAR, CROW, and PARKER, JJ., concur.