[No. 12330. Department Two. May 14, 1915.]

CATHERINE S. TAIT, *Appellant*, v. KING COUNTY, *Respondent.*[1]

HIGHWAYS—DUTY TO REPAIR—ACCEPTANCE OF PLAT. Under Rem. & Bal. Code, § 8787, requiring the county auditor to keep a record of all plats which if situated outside of any incorporated town or village must first be approved by the board of county commissioners, and under Id., § 5575, giving the board general supervision over county roads in the county, and imposing the duty to open roads necessary for public convenience, the approval and filing of a plat does not cast upon the county the duty of keeping open every highway dedicated by the plat; but before such duty devolves upon the county, it must have invited the public to use such highway.

HIGHWAYS—EXISTENCE—DUTY TO REPAIR. The fact that a roadway, dedication of which has been accepted by the county, may have been constructed by a private individual, would not necessarily absolve the county from any duty to keep it in reasonable repair.

HIGHWAYS—EXISTENCE—EVIDENCE—QUESTION FOR JURY. In an action against a county for personal injuries suffered by reason of a defective highway dedicated in a plat, whether or not the county had impliedly invited the public to use the highway is a question for the jury, where it appeared that the county commissioners approved the plat and it was filed in the office of the county auditor, that thereafter the owner of the tract continued for a period of four or five months to grade the streets, presumably with the permission,

[1]Reported in 148 Pac. 586.

express or implied, of the county commissioners, who had actual knowledge that the highway had been graded, promised to send out the road supervisor to look over the matter of repairs, and granted a franchise to put water mains in all the streets of the plat.

HIGHWAYS—ACTIONS—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUF-FICIENCY. Plaintiff cannot be charged with contributory negligence, as a matter of law, from the fact that she had knowledge of the hole in the highway into which she fell in the nighttime, where it appears that plaintiff had no knowledge of an undermined ledge around the hole, which gave way when she was close to the hole, while proceeding carefully on the lookout for it, previous knowledge of the defect being only a fact or circumstance bearing upon the question of contributory negligence, to be submitted to the jury along with all the facts and circumstances surrounding the accident.

Appeal from a judgment of the superior court for King county, Smith, J., entered April 18, 1914, upon granting a nonsuit, dismissing an action for personal injuries sustained by a pedestrian through a defective highway. Reversed.

*Shorett, McLaren & Shorett,* for appellant.

*John F. Murphy* and *S. H. Steele,* for respondent.

MAIN, J.—The purpose of this action was to recover damages for personal injuries alleged to be due to the negligence of the defendant in failing to keep one of its highways in proper repair. The defendant answered the complaint by certain admissions and denials, and pleaded affirmatively that the place where the accident occurred was not in a street or highway which the county was under obligations to maintain or keep in repair; and that the plaintiff's contributory negligence was the cause of the injury. The affirmative matter in the answer was denied by reply. The cause in due time came on for trial before the court and a jury. At the conclusion of the plaintiff's case in chief, the defendant interposed a motion for a nonsuit, which was granted. Motion for a new trial being made and overruled, a judgment was entered dismissing the action. The plaintiff appeals.

The facts, briefly stated, are these: On September 12, 1907, the Sound Trustee Company, the then owner of a cer-

tain tract of land bordering on the east side of Puget Sound, presented to the county commissioners a plat designated as Redondo Beach, Division No. 1. The county commissioners approved the plat, and on September 13, 1907, it was filed in the county auditor's office for King county. The purpose of platting the property was to enable the owner to sell the same as lots and blocks. Upon the plat certain streets and avenues are designated. These are dedicated to the use of the public as highways. In front of this tract of land as platted there is a dock. Upon or near the dock there is a post office and one or two stores. The post office is known as Redondo. The tract of land referred to as platted is near the south boundary line of King county, fronting, as already stated, on Puget Sound from the east.

Along the front of the plat is a street, indicated as Beach Drive. The length of this street is approximately 2,000 feet. It extends from a point a short distance north of the dock, south along the shore just above what is known as the beach. The south end of this drive does not connect with any other street or highway. It ends in what is called by some of the witnesses as a "dead end" or "nowhere." The owner of the property as platted graded Beach Drive and a street at the rear of the plat, and certain streets extending into the plat from these two streets. On Beach Drive a roadway was graded twelve or fifteen feet wide the entire length of the street. The east side of this graded roadway was near the property line on that side of the street. In grading the roadway, the bank was cut down in order to make a level surface for traffic. The surface of the lots adjacent to the street upon the upper side was six or eight feet in places above the level of the street. The grading of the streets mentioned was begun by the owner in June, prior to the presentation of the plat to the board of county commissioners for its approval, and was continued until the month of February, 1913, when the work seems to have been completed.

After the grading of Beach Drive was completed, that street was used generally by the people in that vicinity for the purpose of reaching the dock, post office and store. It was used not only as a footway, but for wagons and other vehicles. The children of the community in going to and from school passed over it.

To the south of Redondo, at a distance of approximately one-half or three-quarters of a mile, was a settlement known as Buenna, but at this place there was no post office. The people from this settlement also used Beach Drive in going to and from Redondo. In order to reach Beach Drive, they came over a roadway across private property.

The use of Beach Drive in the manner mentioned was continued from the time it was opened until the 31st day of December, 1912. On this day there was an extreme high tide at this point on the Sound, and a severe storm, which washed away certain portions of the roadway of Beach Drive. Thereafter vehicles could not pass along the street, but it was used by the people of the vicinity when walking to and from Redondo. Along the roadway there were places where it had been washed away, except a strip of two or three feet on the east side thereof adjacent to the bank mentioned.

On July 30, 1913, the plaintiff and her married daughter left their home, which was about a quarter of a mile south of Redondo and on Beach Drive, for the purpose of going to the post office and store. They traversed the roadway as usual. They left the store to return home at about 9 o'clock that evening. It was then dark. They traveled along the footpath on the east side of the roadway. The daughter preceded the mother, having, as both the mother and daughter testified, the difficulties of the road in mind, and a desire to avoid them. The point where the roadway was most nearly washed away was in front of a tent erected upon an adjacent lot. This fact was known to the appellant and her daughter. The washout at this place was somewhat "V" shaped, across the apex of which, or near the lot line, was placed a plank

for the purpose of walking over. From the evidence of the appellant and her daughter it appears that it was so dark that they could not see the street or the holes therein, and they had in a way to feel their way along. When the daughter reached the point where she thought she was near the "bad" place, as she termed it, she stopped and said to her mother that she thought they were "very close to it." The mother stepped up by her daughter's side, when the earth under the latter's feet gave way, and she was precipitated into the washout a distance of six or eight feet. The appellant did not step into the hole, but the dirt under her feet as she stood near its edge gave way, because the surface of the street was not washed away to the same extent as the soil beneath. One of the witnesses described it as "the lower ground was more soft and washed out in under in places and this old roadway hung out some or shelved over."

At the time the plat was approved by the county commissioners, there were about three families living at Redondo; at the time of the trial there were approximately twelve. This action was brought, as already stated, for the purpose of recovering for injuries which the appellants claimed to have sustained by reason of the fall mentioned. Redondo, or Redondo Beach, was an unincorporated village.

The first question is whether Beach Drive had become a highway in such a sense that the respondent county was under the duty of keeping it in repair. Rem. & Bal. Code, § 8787 (P. C. 115 § 147), imposes upon the county auditor the duty of keeping a record of all plats, and where platted property is not situated within any incorporated town or village, before such plat can be filed in his office, it must be approved by the board of county commissioners of the county. By Rem. & Bal. Code, § 5575 (P. C. 441 § 117), the board of county commissioners have general supervision over the roads in the county, and a duty is imposed upon such board of opening for traffic such roads as are necessary for public convenience. The fact that the board of county commis-

sioners approves a proposed plat as a prerequisite to its being filed and recorded in the county auditor's office, does not cast upon the county the duty of keeping every street or avenue dedicated by the plat to the public use open for traffic. *Ottolengui v. Seattle,* 59 Wash. 37, 109 Pac. 206. Before a duty devolves upon a county to use reasonable care to keep a highway in reasonably safe condition for travel, it must have, either expressly or impliedly, invited the public to use such highway. *Taake v. Seattle,* 16 Wash. 90, 47 Pac. 220; *Lautenschlager v. Seattle,* 77 Wash. 12, 137 Pac. 323. Had the board of county commissioners caused Beach Drive to be graded as it was, under the section of the code above referred to, which makes it the duty of such board to open such highways as are necessary for public convenience, it would hardly be claimed that the county was not under obligations to exercise reasonable care to keep the street in a reasonably safe condition. But from the facts above stated, it appears that the street in question was not graded by the county, but by the platter. The fact that the roadway may have been constructed by a private individual does not necessarily absolve the county from any duty to keep it in reasonable repair. *McKnight v. Seattle,* 39 Wash. 516, 81 Pac. 998.

The ultimate question is whether the board of county commissioners, in permitting the street to be graded by a private party, did not thereby impliedly invite the public to use the same. It can hardly be said that the commissioners are not presumed to know the local conditions of the property platted at the time of approving the plat. After the plat was approved by them, the streets and avenues therein dedicated to public use became highways in a certain sense. Some of the authorities speak of such streets as "paper" streets. After the approval of the plat, the streets and avenues therein designated came under the jurisdiction of the board of county commissioners. Whether they would be improved or not depended upon the action of that board. The fact that the

board of county commissioners, with knowledge express or
implied, permitted the platter of the property to continue to
grade the streets therein for a period of four or five months
after the plat had been accepted would seem to imply an invi-
tation to the public to use such streets when the grading was
completed. The board of county commissioners had actual
knowledge that Beach Drive had been graded, not later than
January 15, 1913, because on this date certain persons living
in the vicinity appeared before the board and advised the
members thereof of the effect of the high tide and storm on
December 31, 1912, upon the roadway, and requested that the
street be repaired. The commissioners at this time advised
those present that they would send out the road supervisor
to look the matter over.

Upon the trial, evidence was offered that the Sound Trus-
tee Company, the platter of the property, had appeared be-
fore the commissioners and was granted a franchise to put
water mains in all the streets of the plat, and that subsequent-
ly a water system was installed. This evidence was rejected.
While this ruling may not have been sufficiently vital to jus-
tify a reversal of the case for that reason alone, we think the
testimony was admissible, at least as a circumstance tending
to show the relation of the board of county commissioners to
the streets and avenues in the plat. The evidence introduced
on behalf of the appellant, and that is all we have before us
upon this hearing, if true, was sufficient to carry the question
to the jury as to whether or not the county had impliedly
invited the public to use Beach Drive as a highway.

The next question is whether the appellant was guilty
of contributory negligence as a matter of law. The evidence
shows that she knew the condition of Beach Drive, and of the
particular hole into which she fell, for some months prior to
the accident; that she had frequently traveled over the street;
that she had a lantern at home, but did not take it with her
upon this particular occasion; that at the time of the acci-
dent she was advised by her daughter and knew they were

closely approaching the hole into which she fell. The evidence does not show, however, that she had any knowledge that the subsoil or under soil was washed away so as to leave the upper and hard surface in the form of a projecting ledge. She did not step into the hole, but while standing near the edge thereof, the ground upon which she was standing gave way under her feet.

The law does not in all cases hold a person injured by a defect in a highway guilty of contributory negligence merely because such person may have had previous knowledge of the defect, but generally treats the matter of knowledge as a fact or circumstance bearing upon the question of contributory negligence to be submitted to the jury along with all the facts and circumstances surrounding the accident, leaving it for them to determine whether, under the facts shown, the injured person was or was not guilty of contributory negligence. *Blankenship v. King County*, 68 Wash. 84, 122 Pac. 616, 40 L. R. A. (N. S.) 182. But in this case, as already mentioned, while the plaintiff had knowledge of the hole, it was not shown that she had knowledge of the particular defect which caused the ground to break off under her feet and precipitate her into the washout. Had she stepped over into the hole without the dirt giving way, a different question would be presented. Under the facts as shown by the evidence in the record, we cannot conclude that the appellant was guilty of contributory negligence as a matter of law, but the question is one for the jury.

The judgment will be reversed, and the cause remanded with direction to the superior court to grant a new trial.

MORRIS, C. J., ELLIS, CROW, and FULLERTON, JJ., concur.