[Nos. 35398, 35441. Department One. March 30, 1961.]

R. C. McKELVIE et al., *Respondents and Cross-appellants,* v. HADLEY D. HACKNEY et al., *Appellants,* TEE CEE, INC., *Respondent and Cross-appellant.*

MARY E. EDWARDS, *Respondent and Cross-appellant,* v. HADLEY D. HACKNEY et al., *Appellants,* TEE CEE, INC., *Respondent and Cross-appellant.**

*Reported in 360 P. (2d) 746.

*Gale P. Hilyer, Jr.,* for appellants.

*Hugh E. Pickel,* for respondent and cross-appellant Edwards.

*Allen, DeGarmo & Leedy* by *George Leedy,* for respondent and cross-appellant Tee Cee, Inc.

MALLERY, J.—The two actions herein were consolidated for trial and again upon appeal. Declaratory judgments and damages for fraud are sought. They are concerned with the Trinity Court Apartments (hereinafter referred to as the apartment house), which are located on Eighth avenue between Jefferson and James streets in Seattle.

In 1948, J. L. Grandey owned two lots located at the site in question. He planned to build an apartment house on one, and, for this purpose, incorporated Cherry Street Investment Co. (hereinafter referred to as Cherry Street).

He transferred one of the lots to Cherry Street in exchange for 32,000 shares of common stock, and kept the other one (hereinafter referred to as the vacant lot). Later in 1948, Cherry Street built the apartment house out of the proceeds of an F. H. A. 608 loan from the Equitable Life Assurance Society of the United States as mortgagee. The vacant lot has been used for tenant parking since the building was completed.

In 1953, Grandey agreed to sell to Christian Melgard the vacant lot, the 32,000 shares of Cherry Street stock, and a $21,000 demand promissory note payable by Cherry Street to Grandey. The purchase price was $167,039.14. A warranty deed for the vacant lot, the stock shares, together with proxies for them, and the note were placed in escrow to be delivered to Melgard, or his successor, when the purchase price was paid. The warranty deed to the vacant lot could be delivered to Melgard after five years upon a lump sum payment of $15,000 on the purchase price.

In 1954, Melgard entered into an agreement to sell his interest in the vacant lot, stock, and note to H. G. Frans for $211,123.35. As part of this sale, two real-estate brokers, Capretto & Clark, Inc., and Vincent D. Miller, Inc., loaned $16,000 to Frans who, in return, executed two $8,000 promissory notes and gave one to each broker. Frans then assigned his vendee's interest in the lot, stock, and note to the brokers to secure payment of the notes. Melgard retained the obligation to pay Grandey. The various documents were placed in escrow.

In 1956 Frans sold his interest in the vacant lot, stock, and note to Jayne Todd (not a party herein) and Mary Edwards (plaintiff-respondent and cross-appellant in cause No. 519,075, hereinafter referred to as the Edwards action) for a price of $229,171.77. Todd and Edwards assumed the obligation to pay the Capretto & Clark and Miller notes and to pay the amount owing on the Melgard-Frans contract. These documents were also placed in escrow.

In late 1956, the defendants-appellants in both causes (hereinafter referred to as Hackney) began to acquire some of the various interests in the apartment house. Hackney

acquired both the Frans vendor's interest and the Todd vendee's interest in the Frans-Todd-Edwards contract and also the payee's interest in the Capretto & Clark note. Hackney then formed Tee Cee, Inc., for the purpose of centralizing the various interests. He induced Edwards to convey her interest in the Frans-Todd-Edwards contract, except her interest in the vacant lot, to Tee Cee. At her urging, he agreed to convey to Tee Cee his vendee's and vendor's interest in the Frans-Todd-Edwards contract and his payee's interest in the Capretto & Clark note, reserving to himself his interest in the vacant lot. In exchange for these various assignments, Hackney was to receive 60,000 shares of Tee Cee stock, and Edwards 40,000 shares. Hackney and Edwards became the officers and directors of Tee Cee. Hackney's subsequent assignment to Tee Cee did not include the Frans vendor's interest or the payee's interest in the Capretto & Clark note. The two assignments provided that Tee Cee would reimburse Hackney and Edwards for any money they had to pay to secure clear title to the vacant lot.

During this same period, Hackney had entered into negotiations with the McKelvies (plaintiffs-respondents and cross-appellants in cause No. 517,598, hereinafter referred to as McKelvie) to sell the Tee Cee stock. On December 28, 1956, Hackney agreed to sell to McKelvie his 60,000 shares of the Tee Cee stock in exchange for 600,000 shares of North Star Uranium stock (found to be worth $30,000) then owned by McKelvie. (Though the agreement was actually signed in December, several conditions and terms were left uncertain, and certain modifications occurred so that the contract did not become final and binding until April 5, 1957.) To secure payment of the underlying obligations, McKelvie gave to Hackney an irrevocable proxy to the Tee Cee stock. When the deal was closed, Hackney informed McKelvie that he owned the Frans vendor's interest and the payee's interest in the Capretto & Clark note, and that they could be purchased for thirty cents on the dollar, which would total $5,000. He did not disclose his prior agreement with Edwards relating to these obligations.

McKelvie was also interested in purchasing Edwards' Tee Cee stock and interest in the vacant lot and, through Hackney, made an offer. Edwards demanded 300,000 shares of North Star Uranium stock and $6,000 cash. When Mc-Kelvie said this was too much, Hackney proposed to Edwards that she transfer her Tee Cee stock and a blank quitclaim deed to the vacant lot to him and that he would secure for her 200,000 shares of North Star Uranium stock (stipulated to be worth $20,000), $5,000 in cash, and an interest in a certain ranch located at Cheney, Washington. Hackney then promised to try and secure the interest in the vacant lot back from McKelvie, in exchange for 100,000 shares of the North Star Uranium stock, and return it to Edwards. McKelvie agreed to buy the Edwards 40,000 shares of Tee Cee stock and to return the vacant lot title to Hackney. Hackney then put his own name in the blank quitclaim deed. The vacant lot was then leased to Tee Cee at forty dollars a month to use for apartment-house parking.

After taking over control and management of the apartment house, McKelvie, at first, made payments on the various underlying and direct obligations. About January, 1958, McKelvie stopped paying on the various interests then owned by Hackney, specifically the vacant lot, the Capretto & Clark note, and the Frans vendor's interest in the Frans-Todd-Edwards contract.

On March 1, 1958, McKelvie instituted an action (cause No. 517,598, hereinafter referred to as the McKelvie action) against Hackney. On January 21, 1959, Hackney served a notice of intention to declare a forfeiture with respect to the Frans and Capretto & Clark obligations, a notice of a Tee Cee stockholders meeting, and a notice of an intention to exercise his Tee Cee stock proxy.

Upon the application of McKelvie, a temporary order restraining these actions was issued against Hackney on January 31, 1959, which was made permanent on February 3rd. Hackney then filed a counter-claim against McKelvie and Tee Cee was added as an additional party defendant. Because of the complexity of the interests involved, the parties, on April 14, 1959, entered into a pretrial order

setting forth the admitted and contested facts and specifying the relief requested by each side.

McKelvie's action is based upon the "contention that he entered into said agreements and contracts and rights as a result of fraud and deceit practiced by the making of material and false misrepresentations by" Hackney. Hackney "denies any false statements or misrepresentations and any claim of fraud and deceit" and counter-claims for default.

Edwards instituted her action for the purpose of compelling Hackney to convey back to her her interest in the vacant lot, alleging that he had acted as her agent and had induced her to enter into the transaction by fraud.

In the McKelvie action, the trial court found that Hackney, was, in fact, guilty of fraud and that McKelvie had been damaged in the sum of $3,000, the difference between the value of what he bargained for ($40,000) and the fair value of what he got ($17,000), less $20,000 that McKelvie owed Hackney on the vacant lot, the Frans vendor's interest, and the Capretto & Clark note. Hackney had his title quieted in the one-half interest in the vacant lot acquired from Todd and received a judgment of $2,800 for back rent and damages. Tee Cee got the Capretto & Clark note and the Frans vendor's interest, plus the proxy to vote the Cherry Street stock. The irrevocable proxy to vote the Tee Cee stock, acquired by Hackney as security for his interest in the Capretto & Clark note and the Frans vendor's interest, was declared void as not coupled with an interest. The obligation of Tee Cee to reimburse expenses incurred in clearing title to the vacant lot was declared void for fraud, lack of consideration, and violation of the statute of frauds.

In the Edwards case, the trial court found that Edwards did not have clean hands, because of her acquiescence in Hackney's bilking of McKelvie, and denied her the equitable relief she sought. Title to the Edwards' half of the vacant lots was quieted in Hackney. Tee Cee was given the Capretto & Clark note and the Frans vendor's interest on the ground that Hackney breached his fiduciary duty as a director in accepting less than the promised consideration.

Further, Tee Cee was ordered to reimburse Hackney for any amount up to $15,000 used to clear title to the vacant lot from the Grandey-Melgard obligation.

All parties have appealed. The controversy is over the significance to be given the admitted facts and the conclusions to be drawn from them.

The following specific findings made by the trial court as to Hackney's behavior affect the conclusions and rulings on the seven main issues in the case. In the Edwards case, it found:

"That the defendant Hadley Hackney is unworthy of belief; that by his own testimony he made statements to different persons at the same time, which statements were diametrically opposed; that his claim of lack of memory so frequently resorted to throughout his testimony, is not credible; that defendant was so activated by his desire to end up with the lots, that he willingly made any statements which he felt would suit his purpose, and intentionally withheld information when he believed it would best suit his purpose."

In the McKelvie case, the trial court found "That the . . . defendant is not credible and not truthful . . . ."

(1) The trial court found that Hackney had promised Edwards that he would transfer to Tee Cee, in exchange for his sixty per cent interest in the stock, (a) the interest which he acquired from Todd, except that in the vacant lot, (b) the Frans vendor's interest in the Frans-Todd-Edwards contract, and (c) the payee's interest in the Capretto & Clark note.

The assignment actually made and accepted by Tee Cee did not include these last two interests. The trial court further found that the acceptance of the assignment by Tee Cee was caused by Hackney breaching his fiduciary duty as an officer and director of Tee Cee. When Edwards became aware of the change, she objected and continued objecting to the time of the trial.

It is the contention of Hackney that the written assignment by him and acceptance by Tee Cee is a full and complete contract and to introduce parol evidence that more consideration was agreed upon is a violation of the

parol evidence rule. We said in *Goerig v. Elliott,* 27 Wn. (2d) 600, 179 P. (2d) 320:

"The rule excluding parol evidence affecting a written instrument does not apply when fraud is the gravamen of the action or defense. . . ."

Both of these actions are based on allegations of fraud so the evidence of the agreement considering the Frans vendor's interest and the Capretto & Clark note was admissible under this exception to the parol evidence rule.

■ Hackney next contends that the trial court had no power to reform the contract, consisting of the assignment and acceptance, by requiring him to pay more than the consideration stated in the instrument. While it is true that a court of equity does not have the power to make a new agreement between the parties or to relieve a hard or oppressive bargain, the court does have the power to reform the written instrument to conform with the intentions of the parties. *Martin v. Momany,* 26 Wn. (2d) 379, 174 P. (2d) 305.

■ In the instant case, the trial court specifically found that the written contract did not conform to the agreement of the parties because of the fraudulent execution of it by Hackney. When fraud induces a variance between a written contract and the agreement between the parties, the latter will prevail and the trial court is empowered to reform the written instrument to conform to the agreement.

■ Having found that Hackney had agreed to convey the Frans vendor's interest and the Capretto & Clark note to Tee Cee as partial consideration for his acquisition of sixty per cent of the stock, the court was correct in ordering these interests conveyed to the corporation and estopping Hackney from forfeiting them.

When the Tee Cee stock was distributed under the Hackney-Edwards agreement, Tee Cee acquired from Edwards the right to enforce the contract as reformed. Thereafter, Hackney held the Frans vendor's interest and the Capretto & Clark note on a constructive trust for the benefit of Tee Cee and the agreement which he made to sell them

to McKelvie is now subject to the will of Tee Cee to either enforce or abrogate.

It is axiomatic that one cannot sell what one does not own. Since Hackney did not own them in his own right, he could not sell them to McKelvie, and it follows that McKelvie owes him nothing as a result of the agreement.

■ (2) An irrevocable proxy to vote the Tee Cee stock was given to Hackney to secure payment of the Frans vendor's interest and the Capretto & Clark note. Since these interests do not belong to Hackney, it is not a proxy coupled with an interest and is, therefore, revocable at the option of the owner of the Tee Cee stock, McKelvie. *State ex rel. Everett Trust & Sav. Bank v. Pacific Wax Paper Co.,* 22 Wn. (2d) 844, 157 P. (2d) 707, 159 A. L. R. 297.

(3) We next consider the "unclean hands" contention as relating to Edwards, and the resulting denial of equitable relief to her. The trial court found:

"That the plaintiff's [Edwards] hands are not clean, since she was willing to conclude her sale to McKelvie, knowing that the defendant [Hackney] had falsely represented to McKelvie the situation relative to the April rents, and knowing that the vendors' interest in the Frans-Edwards-Todd contract and the Capretto & Clark note had not been transferred to Tee Cee, Inc.; that the plaintiff apparently was willing to stand by, as suggested to her, in the expectation that McKelvie would default on the basic obligations, that Hackney would repossess the interests under the Frans-Edwards-Todd contract, and that she would be restored, by defendant, to her proportionate share of the rights in the Trinity Court Apartments."

■ The trial court was in error in holding that such conduct constituted "unclean hands" so as to deny Edwards access to equity. In *J. L. Cooper & Co. v. Anchor Securities Co.,* 9 Wn. (2d) 45, 113 P. (2d) 845, we said:

"The authorities are in accord that the 'clean hands' principle does not repel a sinner from courts of equity, nor does it disqualify any claimant from obtaining relief there who has not dealt unjustly *in the very transaction concerning which he complains.* . . ." (Italics ours.)

In the instant case, the only inequitable conduct found on the part of Edwards was that she sat quietly by and

acquiesced in Hackney's fraud on McKelvie. No claim is made that she was in any way inequitable in her dealings with Hackney. Fraud or inequity practiced against a third person, who does not complain, does not close the doors of equity to a plaintiff guilty of no inequity as against a defendant. *Abslag v. Bock,* 139 Wash. 198, 246 Pac. 300; *Langley v. Devlin,* 95 Wash. 171, 163 Pac. 395, 4 A. L. R. 32; *Tait v. King County,* 85 Wash. 491, 148 Pac. 586.

The trial court found that Hackney did promise to return Edwards' interest in the vacant lot if he was successful in getting it back from McKelvie. Having secured return of the property, Hackney was bound to return it to Edwards, and she was entitled to specifically enforce the contract in equity.

■ (4) In the McKelvie case, the trial court found that the obligation of Tee Cee to reimburse Hackney and Edwards for any payments necessary to obtain clear title to the vacant lot was void for fraud, lack of consideration, and because it violated the statute of frauds. In the Edwards case, on the other hand, the obligation was found to be valid. Since this was only one transaction, the holding must be the same in both cases.

When Tee Cee acquired the assets from Hackney, it acquired them subject to the obligation to pay the balance still due on the Grandey-Melgard contract.

■ The trial court, in the McKelvie case, found that the agreement to reimburse Hackney and Edwards for the payments necessary to clear title to the vacant lot was void for lack of consideration, among other reasons. The assumption of the obligation by Tee Cee was but one part of the overall consideration given for transfer of the remaining Hackney and Edwards interests to Tee Cee. Since the contract did not attempt to itemize the consideration, the court should not do so, and it erred in finding lack of consideration. Further, the trial court found the assumption violated the statute of frauds because it was not in writing signed by the party to be charged. It is quite true that the specific mention of the reimbursement obligation is contained only in the assignments signed by Hackney and

Edwards. However, these two assignments were accepted by Tee Cee, and the acceptance *is* in writing and *is* signed by the officers of Tee Cee. The assignments and acceptance when *construed together* form the written contract which satisfies the statute of frauds.

■ It is further alleged by McKelvie and Tee Cee that the assumption is void because it was induced by fraud. No showing of fraud against Tee Cee is made, and no claim is made that either Hackney or Edwards ever promised to transfer their interests in the vacant lot to Tee Cee and then breached their fiduciary duty as directors in accepting an assignment without these interests. McKelvie alleges that he was never informed during the negotiation period of the fact that Tee Cee was not acquiring the vacant lot. However, the trial court found, and no error is assigned to the finding, that McKelvie was informed of this fact "immediately prior to the actual closing" but he "felt that he had committed himself to the extent that he could not back out, and decided to go ahead *notwithstanding such information*." (Italics ours.) Having elected to close the deal with full knowledge, he has waived any right to object. Since there was no misrepresentation or concealment of a material fact, one of the essential elements of actionable fraud is absent. *Marion v. Grand Coulee Dam Hotel,* 35 Wn. (2d) 589, 214 P. (2d) 204.

McKelvie claims that the interest in the vacant lot is unseverable from the other interests contained in the mesne conveyances starting with the Grandey-Melgard contract. We do not agree.

The interests are severable and, even though access to the vacant lot is important to the operation of the apartment house, the owners of property are entitled to segregate it in any way they choose. Hackney and Edwards were within their rights in selling only part of what they owned.

(5) Prior to April 1, 1958, Tee Cee had been paying rent of forty dollars a month on the vacant lot. On April 7th, Hackney served a notice to pay rent or vacate. He never brought an unlawful detainer action but, rather, included

in his cross-complaint a prayer for damages for the unpaid rent. At no place in the cross-complaint is a claim of other damages made.

The trial court found that reasonable rent for the vacant lot amounted to $100 a month from April 1, 1958, to August 31, 1959, the date of the judgment. This would make a total of $1,700. However, the trial court entered a judgment for $2,800 with no explanation for the additional $1,100 except that it was for damages. Since no request for such damages was made, the trial court was unjustified in granting them, and the judgment must be reduced accordingly.

(6) This brings us to the finding of the trial court that Hackney was guilty of fraud in inducing McKelvie to enter into the contract for purchase of the Tee Cee stock and the resulting assessment of damages. As mentioned above, the 600,000 shares of North Star Uranium stock paid by McKelvie as consideration for Hackney's sixty per cent interest was' worth $30,000. Though this differs from the valuation of $20,000 for the 200,000 shares paid Edwards, no error is assigned to the trial court's valuations, so they must govern.

An indispensable element of actionable fraud is that there must be "consequent damage." *Marion v. Grand Coulee Dam Hotel, supra.* If McKelvie received property worth $30,000, he was not damaged, and there is no actionable fraud. It is, thus, necessary to determine the value of the property which he acquired.

The trial court found that "the reasonable net value of the stock" received from Hackney was $17,000. McKelvie claims that there is insufficient evidence to support this finding. Much evidence was introduced at the trial relative to the value of Tee Cee. The low valuation was $2,000, the high valuation was $68,000 (value of the apartment house and reserve fund less outstanding obligations). Since the judgment of the trial court is based on conflicting evidence and is within the scope of that evidence, it will be accepted as a verity by this court.

The trial court's valuation of $17,000 was based on two assumptions (a) that McKelvie would have to pay $5,000 to acquire the Frans vendor's interest and the Capretto & Clark note, and (b) that Hackney had fraudulently concealed the obligation of Tee Cee to reimburse the $15,000 payment necessary to secure clear title to the vacant lot. Both of these assumptions are unsupported by the record. We have previously pointed out that McKelvie does not have to pay either obligation himself and was fully aware, before the contract was completed, of the $15,000 reimbursement obligation of Tee Cee. Therefore, the interest which McKelvie secured from Hackney was, in fact, worth $37,000 and, there being no damages, the fraud is not actionable.

(7) Finally, the trial court found that Hackney had promised to deliver the property to McKelvie with the April, 1957, rent intact and with all bills, mortgages, and debt obligations paid up to March 31st. This Hackney failed to do, and the trial court was correct in ordering restitution of the shortage in the April rent, approximately $934, and in ordering him to pay the past due mortgage payments.

The remaining assignments of error by the appellants and cross-appellants are without merit.

*McKelvie v. Hackney*, cause No. 517,598, is remanded to the trial court with directions to modify the judgment as follows:

(1) Reduce the amount of the judgment for damages for failure to pay rent on the vacant lot from $2,800 to $1,700;

(2) Strike that portion of the judgment requiring Mc-Kelvie to purchase from Hackney the Frans vendor's interest in the Frans-Todd-Edwards contract and the payee's interest in the Capretto & Clark note;

(3) Strike that portion of the judgment relieving Tee Cee of the obligation to reimburse Hackney and Edwards for any payments made by them to secure quiet title to the vacant lot;

(4) Strike the $3,000 judgment in favor of McKelvie against Hackney which arose out of the fraud allegedly practiced by Hackney against McKelvie.

*Edwards v. Hackney,* cause No. 519,075, is remanded to the trial court with directions to modify the judgment by quieting title, as between the parties, in Edwards to a one-half interest in the vacant lot.

Edwards shall recover her costs from Hackney. The remaining parties shall bear their own costs.

DONWORTH, WEAVER, OTT, and HUNTER, JJ., concur.