**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| MEL T. ROMERO, | No. 53969-1-II |
| Appellant, | |
| v. | |
| SECRET GARDENS OF WASHINGTON, LLC; WILLIAM DELANEY, CHRISTY KLEIN, | UNPUBLISHED OPINION |
| Respondents, | |
| PETER WILSON, JOHN WILLIAM HUGHES, KYLE DELANEY, | |
| Defendants. | |

GLASGOW, A.C.J.—Mel T. Romero sued his former employer, Secret Gardens of Washington LLC, a marijuana producer and processor. After a bench trial, the trial court held that Secret Gardens did not breach its employment agreement with Romero and that it did not commit any statutory wage violations.

The central issue in the contract dispute was when Secret Gardens' obligation to pay Romero a $150,000 annual salary began—October 1, 2014 or January 1, 2015. The trial court concluded that there was no meeting of the minds with regard to the start of the salary period. Thus, Romero's breach of contract claim failed.

On appeal, Romero argues that the trial court erred by adopting several findings of fact that he contends were not supported by substantial evidence. Romero also argues that the trial court

erred when it interpreted the contract. Romero appeals the trial court's conclusion that there were no wage violations, and he requests attorney fees and costs.

We affirm the trial court's findings of fact and conclusions of law and order, and we deny Romero's request for attorney fees and costs.

FACTS

A.    Background

William Delaney and Christy Klein, husband and wife, are the sole owners of Secret Gardens. In 2013, Delaney and Klein obtained a marijuana grow license and started the business. Neither Delaney nor Klein had any prior experience in marijuana production. Rather, Kyle Delaney, Delaney's son, encouraged his father to seize the opportunity presented by the newly legalized recreational marijuana industry.

In January 2014, Delaney and Klein leased an 8,000 square foot facility in Bremerton and immediately began construction for a contained, two-story marijuana production facility inside of the warehouse. To initially invest in Secret Gardens, Delaney and Klein quit their jobs, sold everything of value in their house, maximized their credit card debt, and liquidated their 401(k) accounts.

By September 2014, with one or two grow rooms operational but still a significant amount of construction work left to do, Delaney and Klein moved in their first batch of marijuana plants. Around the same time, Kyle encouraged Delaney to start a research and development marijuana breeding program to develop unique marijuana strains for Secret Gardens. Kyle recommended Romero, a marijuana grower who sold seeds, for the research and development position.

In early September 2014, Delaney interviewed Romero. They discussed Romero's qualifications, the job responsibilities, and compensation. Romero mentioned that his annual

earnings from selling marijuana and seeds fluctuated between $150,000 and $200,000 a year, and he wanted an annual salary of $150,000. Delaney agreed to the $150,000 salary and offered to hire Romero as Director of Research and Development (R&D).

The trial court found that Delaney and Romero discussed a start date of January 1, 2015 for the position and for his salary.[1] Delaney chose that date because he anticipated Secret Gardens' first harvest would be in January, and there would be "no revenue streams coming in prior to selling anything." Verbatim Report of Proceedings (VRP) (Aug. 14, 2019) at 151.

B.      Romero's Employment Contract

Shortly thereafter, Delaney downloaded a blank contract that he found on the Internet and began to make alterations, describing the online contract as "almost a plug and play, . . . they prompted you [with] questions . . . and let you put in what you wanted." *Id.* at 103-04. In the contract, Delaney indicated that Romero's annual salary would be $150,000 and, at paragraph 7, that "[e]mployee's annual compensation period will commence on January 1, 2015." Clerk's Papers (CP) at 1240. For Romero's start date, the draft contract stated, "The Employee will commence permanent full-time employment with the Employer on the __ day of _____ 2014 (the 'Commencement Date')." CP at 1239. The draft contract included additional provisions concerning at will termination, conflict of interest, noncompetition, nonsolicitation, and duties and obligations concerning confidential information, among others.

The trial court found that Delaney printed and gave a copy of the contract to Romero,[2] and later e-mailed Romero an electronic version. Romero took the contract to his attorney to review and make changes.

---

[1] Romero disputes this finding.
[2] Romero disputes this finding.

Romero's attorney made multiple amendments to the draft contract. He deleted some provisions related to conflict of interest, noncompetition, nonsolicitation, and confidential information. The revised contract removed some, but not all, references to at will employment and added a one-year term. For work hours, the revised contract deleted mention of Romero's full time employment and added that Romero was to "determine his own work schedule." CP at 1395 (underscore omitted).

Relevant to this appeal, Romero's attorney revised paragraph 7 to state that Romero's "annual compensation period will commence (on the date that this agreement is signed) (or January 1, 2015 with retroactive payments from the date of _____)." CP at 1394 (underscore omitted). The trial court found that Romero printed the revised contract and wrote October 1, 2014 as the commencement date.[3]

Romero and Delaney met again about the contract. Delaney was preoccupied with getting the business licensed and open for production. Romero told Delaney changes had been made but he did not discuss the extent or significance of the changes. He did not discuss any specific revisions, and they were not redlined. In paragraph 7, relating to when Romero's annual compensation period would begin, neither Delaney nor Romero selected an option or filled in the blank regarding retroactive payments. Delaney conceded he did not review the changes before signing the contract and placing it into a file. Romero offered conflicting testimony about the circumstances surrounding execution of the contract, and the trial court found his version of these events "lack[ed] credibility." CP at 1081.

_____
[3] Romero disputes this finding.

On October 1, 2014, Romero began his work at Secret Gardens, starting with germinating dozens of marijuana seeds.[4] At the time, Secret Gardens did not have a formal system to track their employees' work hours. Secret Gardens' visitor sign in sheets indicate that between October 1, 2014 and November 14, 2014, Romero came to the Secret Gardens facility 7 times, for a total of 12 hours of work, signing in as a visitor each time.

Secret Gardens paid Romero on an irregular basis for his work with checks and cash payments from October 1, 2014 through November 14, 2014, although Delaney could not testify as to what each payment represented in terms of hours worked. For Romero's work, Secret Gardens did not withhold federal taxes, make payments for Romero to be covered by workers' compensation insurance, or issue Romero a form 1099 or a form W-2.

Delaney and Klein contend that Romero was an independent contractor between October and December 2014, and he was to become an employee on January 1, 2015. Romero did not receive an employee badge until January 2015.

C.      November 14, 2014 Meeting

In November 2014, Delaney and Klein realized they were behind schedule on construction and they would not be ready to sell their product by January 2015. Delaney thought they were about four months away from bringing the first harvest to market. Delaney and Klein admitted they were in "deep financial trouble" because of the construction delays, the mounting costs, and the lack of revenue. 1 VRP (Aug. 15, 2019) at 120. In November 2014, Delaney and Klein acknowledged that they would not be able to honor their employment contracts with annual salary compensation periods beginning in January 2015.

---

[4] Romero disputes the trial court's finding that he began to grow plants at Secret Gardens at this time.

On November 14, 2014, Delaney held a meeting for all Secret Gardens employees and contractors.[5] At trial, Delaney testified that he told employees that Secret Gardens was canceling all employment contracts due to a lack of revenue. Any employees who continued to work would be paid minimum wage for hours worked. Delaney provided the employees with a memorandum summarizing the meeting and explaining that the employment contracts were canceled effective immediately. Klein took meeting notes consistent with Delaney's testimony, and she recorded Romero's attendance. The following day, November 15, 2014, Delaney sent Romero an e-mail thanking him for attending the meeting and for his input. Romero responded that he was "glad to help." CP at 1307.

After the meeting, Romero continued to work for Secret Gardens.[6] Still lacking any formal time tracking for employees, Delaney and Klein continued to track Romero's work hours via visitor sign in sheets. Starting in April 2015, concerned with Romero's infrequent work hours, Delaney and Klein began to calculate Romero's work hours by watching surveillance video. Delaney and Klein recorded Romero's hours by hand on a calendar.

Secret Gardens continued to pay Romero via intermittent checks and cash payments after the November 14, 2014 contract termination meeting. Delaney testified that he believed he had paid Romero at least minimum wage for all hours that Romero worked.

On June 2, 2015, Romero quit during a meeting with Klein. Romero asked to be paid per his contract, and Klein responded that the contracts were previously canceled. Romero asserts this was the first time he heard the contracts had been canceled. Romero testified that he asked to be paid $5,000 when he quit, and Delaney and Klein paid him $1,900 at that time.

---

[5] Romero disputes that he attended the meeting and that his employment contract was canceled on this date.

[6] Romero asserts he did not agree to work for minimum wage.

At trial, Romero conceded that he had been paid a total of $5,050 for his work between October 1, 2014 and June 2, 2015. The trial court made an unchallenged finding that this was the total amount Romero was paid.

Romero claimed he was entitled to additional payment for hours worked, and, at some point, Delaney and Klein were prepared to pay Romero an additional $3,000 payment to resolve the dispute. Before they paid him this amount, Romero sent Delaney and Klein a demand letter requesting over $100,000. After that, Delaney and Klein did not pay Romero the $3,000.

D.    Procedural History

Romero sued Secret Gardens, Delaney, and Klein[7] for money owed under the employment contract and unpaid wages. In his complaint, Romero alleged that he worked for Secret Gardens between October 1, 2014 and June 2, 2015, and that Secret Gardens never paid him as required under his contract. Romero also alleged wage statute violations under RCW 49.48.010 and 49.52.070, claiming he was never paid at all for some hours worked. Romero did not bring a claim under chapter 49.46 RCW, Washington's Minimum Wage Act.

Secret Gardens brought counterclaims against Romero for misrepresentation, fraudulent inducement, negligence, and breach of contract. All counterclaims related to Romero's allegedly negligent care of Secret Gardens' marijuana plants.

The case proceeded to a bench trial. In Romero's case in chief, Romero, Delaney, and Klein all testified, in addition to other witnesses. As discussed in more detail below, Romero's testimony was impeached on numerous occasions. At the close of Romero's case in chief, Secret Gardens brought a motion to dismiss under CR 41(b)(3).

---

[7] Three former Secret Gardens employees, Peter Wilson, John William Hughes, and Kyle Delaney, were also named, but Romero withdrew his claims against them before trial because they were not owners of Secret Gardens.

E.        Trial Court's Decision

The trial court adopted findings of fact and conclusions of law consistent with the facts recited above. Relevant to this appeal, the trial court found that before the contract was signed, Delaney and Romero discussed that the obligation to pay him a salary would begin on January 1, 2015. The trial court also found that Romero's attorney's changes to paragraph 7 rendered it ambiguous as to when the salary obligation was to begin.

The trial court found Romero wrote in the October 2014 start date for the overall contract. The trial court also found that Romero was paid by cash or check for all of his hours worked in October 2014 and until November 14, 2014 before the contract cancellation meeting. As noted above, the trial court found that Romero's conflicting versions of events surrounding the review of the employment contract and its execution were not credible. The trial court found Romero's contract was canceled on November 14, 2014 before any salary obligation began. Romero agreed that after that date, he would be paid hourly at the rate of minimum wage.

The trial court then adopted several conclusions of law. The trial court concluded that the employment contract, initially drafted by Secret Gardens, was "significantly revised" by Romero's attorney. The trial court explained that Romero's attorney "entirely rewrote the operative clause in dispute here, Paragraph 7, and consequently must be considered the drafter of that clause." CP at 1083.

The trial court then concluded that the start date for Romero's annual compensation period was ambiguous. Although the "'Commencement Date'" of the entire contract was October 1, 2014, the start of the salary period was either "'on the date this Agreement is signed' 'or January 1, 2015 with retroactive payments from the date of _____.'" *Id.* The trial court concluded that the contract "did not indicate which of the two options the parties intended to apply." Thus, the

compensation clause did not indicate that the salary period commenced on October 1, 2014. The trial court concluded that "there was no meeting of the minds on when the salary period would commence." *Id.*

Next, the trial court concluded that Secret Gardens' determination that Romero's salary start date was January 1, 2015 was correct for four reasons. First, because Romero drafted the ambiguous start date provision, paragraph 7, the trial court strictly construed the provision against Romero and in favor of Secret Gardens. Second, "[t]he Parties' subsequent mutual performance support[ed] Secret Gardens' interpretation that the Parties intended that Mr. Romero begin January 1, 2015 [because between] October and December 2014, the Parties acted as if Mr. Romero's employment as Secret Gardens' Director of R&D had not yet commenced." CP at 1084. Third, because Romero testified that he did not begin working until October 1, 2014, "the contract was not intended to have his salary start on the date it was signed on September 17, 2014, as one option in Paragraph 7 provide[d]." *Id.* And fourth, because Delaney's initial proposed contract stated that the annual compensation period began on January 1, 2015, which was Secret Gardens' understanding, the trial court interpreted the contract's annual compensation period to commence on January 1, 2015 without retroactive application.

The trial court also concluded that the contract did not require Secret Gardens to provide a signed written notice to terminate the contract; a verbal termination sufficed under the contract's terms. Accordingly, the trial court concluded that Secret Gardens terminated Romero's contract at the November 14, 2014 meeting before the start of his salaried annual compensation period.

Finally, the trial court concluded that Delaney and Klein (1) "did not breach the Employment Agreement," (2) "have not committed any wage violations under [c]hapter 49.48 RCW for failing to pay any salary owed," (3) were "not liable to Mr. Romero under RCW

49.52.070 because they have not committed any wage violations under [c]hapter 49.48 RCW," and (4) Romero "has not alleged facts or any cause of action for violation of Washington's Minimum Wage Act, [chapter 49.46 RCW]." CP at 1084-85.

After adopting these findings of fact and conclusions of law, the trial court granted Secret Gardens' motion for involuntary dismissal under CR 41(b)(3) and dismissed Romero's claims against Secret Gardens with prejudice. Secret Gardens withdrew their counterclaims.

Romero appeals the trial court's findings of fact and conclusions of law and order.[8]

ANALYSIS

Romero argues that the trial court should have concluded that the obligation to pay him $150,000 in annual salary began October 1, 2014. He contends the trial court should have enforced the contract's severability clause in a way that reformed the contract in his favor. He also asserts that Secret Gardens was at least required to pay him $3,000 in wages for uncompensated hours worked. Romero asks this court to review the record and independently make factual findings. Romero requests remand for the trial court to award wages, exemplary damages, and attorney fees and costs.

"CR 41(b)(3) provides that in a bench trial, the trial court may grant a [defendant's] motion to dismiss at the close of the plaintiff's case as a matter of law or a matter of fact." *Commonwealth Real Estate Servs. v. Padilla*, 149 Wn. App. 757, 762, 205 P.3d 937 (2009). Because the trial court dismissed Romero's claims against Secret Gardens on a CR 41(b)(3) motion after adopting findings of fact and conclusions of law, we review such findings for substantial evidence. *In re*

---

[8] Romero also filed an amended notice of appeal challenging an order allowing the defendants to amend their answer and add counterclaims, but he does not assign error to this order, nor does he argue on appeal that the trial court erred when it entered this order.

*Dependency of Schermer*, 161 Wn.2d 927, 940, 169 P.3d 452 (2007). We then determine whether the trial court's challenged conclusions of law are supported by the findings of fact. *Id.*

## I. DISPUTED FINDINGS OF FACT

Romero challenges nine findings of fact, asserting that they were not supported by substantial evidence. We disagree.

"Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true." *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006), *aff'd*, 162 Wn.2d 340, 172 P.3d 688 (2007). Evidence can be substantial even if other reasonable interpretations of the evidence exist. *Conway Constr. Co. v. City of Puyallup*, 13 Wn. App. 2d 112, 116, 462 P.3d 885, *review granted*, 196 Wn.2d 1017 (2020). We defer to the trial court's determinations about conflicting testimony, persuasiveness of the evidence, and witness credibility. *Id.* Appellate courts shall not disturb the trial court's ruling if substantial, yet conflicting, evidence supports the findings of fact. *Id.*

A.      Finding of Fact 10

Romero challenges the trial court's finding that Delaney and Romero discussed that Romero would start his employment as R&D Director on January 1, 2015. Romero highlights that the trial court found Romero began working on October 1, 2014, and his breeding program began in October as well. But Delaney testified that during Romero's interview, they discussed a start date of January 1, 2015 for the salaried position. January 1, 2015 was the same annual compensation period start date for all other salaried employees because of the upcoming first harvest in January and the lack of revenue before that.

We hold that Delaney's testimony and the other contracts provide substantial evidence that supports finding of fact 10.

B.    Finding of Fact 11

Romero contends that substantial evidence does not support the trial court's finding that in September 2014, Delaney provided Romero "'a signed, hardcopy Employment Contract that he had found and downloaded from the internet.'" Br. of Appellant at 17 (bold face omitted). But there was testimony that Kyle, Delaney's son, personally delivered the hardcopy to Romero. Romero himself testified that Kyle came to his residence and gave him a hardcopy of the contract prepared by Delaney. Romero then asked Kyle to have Delaney e-mail him an electronic version of the initial contract for his attorney to review. Therefore, substantial evidence supports finding of fact 11.

C.    Finding of Fact 16

Romero challenges the trial court's finding that Romero's attorney's modifications to the contract "resulted in internally inconsistent and ambiguous start dates for Mr. Romero's annual compensation period." Br. of Appellant at 18 (bold face omitted). Romero contends that his attorney's changes to paragraph 7 did not create any ambiguities because there were blanks left in the contract and two options for the parties to decide between, encouraging discussion between the parties.

Romero testified that he asked his attorney to ensure that he would be paid on January 1, 2015 retroactively for his work between October and January, stating that "[t]hey wanted me to start in September and not get paid until January. . . . I didn't think that was correct." 1 VRP (Aug. 15, 2019) at 187. After Romero's attorney's revisions, paragraph 7 stated that Romero's "annual compensation period will commence (on the date that this agreement is signed) (or January 1, 2015 with retroactive payments from the date of _____)." CP at 1394 (underscore omitted). Neither option was selected.

First, the trial court's description of paragraph 7 is accurate in light of the provision's plain language: "Paragraph 7 indicated Mr. Romero's annual compensation period salary would begin either on the date the employment contract was signed, or on some unspecified date prior to January 1, 2015." CP at 1081.

Second, substantial evidence supports the trial court's finding that the amended language was internally inconsistent and ambiguous. Before Romero's alterations, paragraph 7 read, "Employee's annual compensation period will commence on January 1, 2015." CP at 1394. Romero's attorney rewrote paragraph 7 to contain two alternatives, one with an undetermined retroactivity date. Both Romero and Delaney testified that neither could identify when Secret Gardens was required to pay Romero the annual salary based on the plain language of the provision.

Substantial evidence supports finding of fact 16.[9]

D.     Finding of Fact 18

Romero argues that substantial evidence does not support the trial court's finding that "Romero filled in the date his employment would commence [as] October 1, 2014." Br. of Appellant at 18-19 (bold face omitted). Romero asserts that Delaney wrote this date on the contract instead.

Substantial evidence supports the trial court's finding because, although Romero denied he wrote in the date at trial, when he was initially deposed, Romero testified that he filled in the date. Delaney consistently responded that he was unsure who wrote in the date. At trial, when asked whether he wrote the date, Delaney stated, "It could be. It looks like my writing. It could be." VRP

---

[9] To the extent this issue also involves a question of law, we also address the validity of the trial court's legal conclusion below.

(Aug. 14, 2019) at 112. On cross-examination, Delaney repeated, "Like I mentioned before, it could be or could not be. It's messy like mine. I'm not too sure." *Id.* at 155.

We decline to disturb the trial court's finding because evidence in the record, Romero's deposition testimony, supports the finding. *Conway Constr. Co.*, 13 Wn. App. 2d at 116. We hold that substantial evidence supports finding of fact 18.

E.      Finding of Fact 20

Romero contests the trial court's finding that "Romero's conflicting versions of events surrounding the review of the Employment Contract and its execution lack credibility." Br. of Appellant at 19 (bold face omitted). Romero asserts that he and Delaney share the same narrative regarding the events on the day the contract was signed.

Romero testified inconsistently at trial regarding the events leading up to the contract's execution. At trial, Romero testified that he had Delaney e-mail him the contract, which he then forwarded to his attorney. At his deposition, Romero testified that he gave his attorney a paper copy of the agreement, and he believed his attorney "'whited out some portion of it and re-typed in the changes.'" 2 VRP (Aug. 20, 2019) at 454-55 (reading from deposition). Next, Romero testified at trial that he did not discuss his attorney's alterations with Kyle, while during his deposition Romero testified that he "'did discuss the changes with Kyle, and I told him to observe the changes.'" *Id.* at 455-56 (reading from deposition).

At trial, Romero testified that during the meeting where he gave Delaney the modified contract, Delaney "thumbed through the pages and read it over, rather quickly I thought, and then he signed it," before giving Romero a tour of the facility. 1 VRP (Aug. 15, 2019) at 190. In contrast, during his deposition, Romero testified that his conversation with Delaney regarding the contract lasted for "'half an hour'" and he watched Delaney "'read it over in front of me." 2 VRP (Aug. 20,

2019) at 459 (reading from deposition). Romero testified, "'I did show him the changes. I pointed them out to him and let him know the contract he presented me, those were the changes I made or my attorney made.'" *Id.* at 460 (reading from deposition). Even further, Romero testified that Delaney was not concerned that Romero had changed the contract's overall commencement date to October 1, 2014, and that "'[a]s a matter of fact, [Delaney] welcomed it.'" *Id.* (reading from deposition).

We defer to the trial court's determination about Romero's credibility, but we also note that the finding is plainly supported by differences between Romero's deposition testimony and his trial testimony. *Conway Constr. Co.*, 13 Wn. App. 2d at 116. We hold that substantial evidence supports finding of fact 20.

F.      Finding of Fact 22

Romero challenges the trial court's finding that Romero initially helped Delaney and Klein with "odd jobs and with setting up the facility," that he "began to grow his plants," and that Delaney and Klein paid him "by cash and check, since his annual compensation period had not yet commenced." Br. of Appellant at 20-21 (bold face omitted). Romero asserts that his annual compensation period started either September 18, 2014 or October 1, 2014, and that he began his breeding program on October 1, 2014.

Romero testified that in October and November 2014, he sporadically came to the facility to plant seeds, and there is a period of three to six weeks when the seeds germinate before requiring further care. Beyond that, he could not do much more work because the research and development rooms were unfinished, lacking lighting, ventilation, and other equipment.

Romero, Delaney, and Klein all testified that Delaney and Klein paid Romero with check and cash payments between October 2014 and January 2015. Canceled checks, cash payment

receipts, and bank records were presented in support of their testimony. Similarly, Delaney and Klein testified that all other employees whose annual salary periods were to start in January 2015 were paid in cash or by check for the hours they worked between October 2014 and January 1, 2015.

We hold that substantial evidence supports finding of fact 22.

G.      Findings of Fact 26, 27, and 28

Romero argues that the trial court erred when it found that on November 14, 2014, Romero attended a meeting where his contract was verbally canceled, that the meeting effectively canceled Romero's employment contract, and that afterward Romero agreed to stay on and continued to work on a minimum wage basis. Romero contends that he did not attend the meeting and he never received notice that his contract was canceled.

First, substantial evidence supports the trial court's findings that Romero attended the November 14, 2014 meeting and that his employment contract was canceled at the meeting. Delaney and Klein testified at length regarding this meeting, and both testified that Romero was present. During the meeting, Delaney informed all employees verbally that their contracts were canceled. Klein's contemporaneous meeting notes are consistent with Delaney's testimony and indicate that Romero attended the meeting. Delaney also provided a hardcopy memorandum for all employees in attendance. The memorandum stated, in relevant part, "We cannot honor any contracts from this date forward. All people who stay will be paid hourly at minimum wage for all work performed." CP at 1303. The next day, Delaney sent Romero an e-mail thanking him for his attendance and for his input. In an e-mail reply, Romero wrote that he was "glad to help." CP at 1307.

Second, substantial evidence supports the trial court's finding that Romero "agreed to stay on and continued to work on a minimum wage basis." CP at 1082. Because the trial court correctly determined that Romero attended the meeting terminating his contract, the language of the written memo distributed at the meeting, combined with the fact that Romero continued to work at Secret Gardens after the meeting, together support the trial court's finding that Romero agreed to continue working for minimum wage. Substantial evidence supports findings of fact 26, 27, and 28.

In sum, we hold that the challenged factual findings are all supported by substantial evidence in the record. The remaining unchallenged factual findings are verities on appeal. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).

## II. CONTRACT INTERPRETATION

The purpose of contract interpretation is to determine the parties' intent. *Kelley v. Tonda*, 198 Wn. App. 303, 311, 393 P.3d 824 (2017). Washington courts follow the objective manifestation theory of contracts, where we determine the parties' intent based on an agreement's objective manifestations, including what is written in the contract, rather than the parties' unexpressed subjective intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503-04, 115 P.3d 262 (2005).

The plaintiff has the burden to prove breach of an employment contract. *Bresemann v. Hiteshue*, 151 Wash. 187, 189-90, 275 P. 543 (1929). The application of the law to the trial court's findings of fact is a question of law that we review de novo. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). Accordingly, we review de novo the trial court's conclusions of law relating to contract interpretation.

A.      Ambiguity in Paragraph 7

1.  The overall contract commencement date does not resolve the ambiguity

Romero argues that the trial court should have read the contract as a whole to determine when the salary obligation began, and because the start date of the entire contract was October 1, 2014, the trial court should have concluded that was also the salary start date. Romero contends that the trial court's interpretation that Secret Gardens was not obligated to pay Romero a salary until January 1, 2015 required the trial court to unreasonably insert terms into the contract that did not exist.

Delaney and Klein counter that the trial court properly recognized that paragraph 7 was ambiguous because it indicated that Romero's salary period would begin either "'on the date the employment contract was signed, or on some unspecified date prior to January 1, 2015.'" Revised Br. of Resp'ts at 29 (emphasis omitted) (quoting CP at 1081). We agree the provision was ambiguous because the contract did not establish which of the two options the parties intended to select.

"An ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole." *Grant County Constructors v. E. V. Lane Corp.*, 77 Wn.2d 110, 121, 459 P.2d 947 (1969). Even if some words used in a contract are ambiguous, "if the terms of the contract taken as a whole are plain and unambiguous, the meaning should be deduced from the language alone without resort to extrinsic evidence." *Id.*

Here, the ambiguity in paragraph 7 cannot be resolved by examining the contract's other provisions. Although paragraph 1 includes a contract "Commencement Date" of October 1, 2014, CP at 1098, the contract includes a separate provision regarding the start date for Romero's salary period. Had the parties intended for Romero's salary to begin on the commencement date in

paragraph 1, the parties could have either said this explicitly or removed any mention of a salary-specific start date within the "Employee Compensation" provisions in paragraph 7. CP at 1099.

We hold that the overall contract start date does not resolve the ambiguity in paragraph 7.

2.      The trial court properly construed paragraph 7's ambiguity against Romero

Romero argues that the trial court erred when it determined that Romero drafted paragraph 7 and construed the ambiguity against him. Romero argues that the contract was the product of negotiation, where the parties exchanged an offer and a counteroffer before signing the agreement. Thus, he says, the ambiguity was the fault of both parties. We disagree.

We generally construe ambiguities against the contract's drafter so that the drafter cannot later take advantage of avoidable ambiguities. *McKasson v. Johnson*, 178 Wn. App. 422, 429, 315 P.3d 1138 (2013). But an ambiguous contract will not be construed against the drafter when the parties' intent is clearly expressed in the record. *Forest Mktg. Enters., Inc. v. Dep't of Nat. Res.*, 125 Wn. App. 126, 132-33, 104 P.3d 40 (2005).

Here, there is an unchallenged finding that Romero's attorney redrafted paragraph 7, and the record supports the trial court's finding. As discussed above, the trial court was correct that the resulting paragraph 7 was ambiguous. The trial court also correctly concluded that ambiguous provisions are interpreted against the drafter. Because Romero exclusively redrafted paragraph 7, we construe the ambiguity against him.

B.      Meeting of the Minds

The trial court concluded that there was no meeting of the minds on when the salary period would start. Delaney and Klein argue that in light of the parties' failure to choose one of the two options expressed in paragraph 7, and that provision's resulting ambiguity, there was no meeting

of the minds regarding the essential term on which Romero relies for his contract claim. We agree that Romero's contract claim fails on this basis.

To be enforceable, a contract requires a meeting of the minds on the essential contract elements. *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wn.2d 120, 125-26, 881 P.2d 1035 (1994). As discussed above, the language of paragraph 7 in the signed contract reflected two alternative start dates for the salary period. Because the parties chose neither option and because the parties left the retroactivity date blank, the contract language does not establish that the parties came to an agreement with regard to this term. *See id.* at 127-28 (discussing the lack of evidence of agreement to material terms).

Extrinsic evidence also supports the conclusion that there was no meeting of the minds on the start of Romero's salary period and Secret Gardens' corresponding salary obligation. Romero argues that the trial court erred when it considered extrinsic evidence because a reasonable interpretation for the contract existed within its plain language. But as explained above, the parties' intent cannot be discerned from the language of paragraph 7 alone.

The context rule allows consideration of extrinsic evidence to help understand the parties' intent. *Hearst*, 154 Wn.2d at 502. Extrinsic evidence cannot be used to "'show an intention independent of the instrument' or to 'vary, contradict or modify the written word.'" *Id.* at 503 (quoting *Hollis v. Garwall, Inc*., 137 Wn.2d 683, 695-96, 974 P.2d 836 (1999)); *Viking Bank*, 183 Wn. App. at 713. Extrinsic evidence of a party's unilateral or subjective intent as to a contract's meaning is inadmissible. *Bort v. Parker*, 110 Wn. App. 561, 574, 42 P.3d 980 (2002). Extrinsic evidence includes, among other things, "all the circumstances surrounding the making of the contract," as well as "the subsequent acts and conduct of the parties." *Nye v. Univ. of Wash.*, 163 Wn. App. 875, 883, 260 P.3d 1000 (2011).

Although Romero claims his employment began October 1, 2014 and he was entitled to payment of his $150,000 salary starting on that date, the trial court concluded, "Between October and December 2014, the Parties acted as if Mr. Romero's employment as Secret Gardens' Director of R&D had not yet commenced." CP at 1084. When "Romero came to the facility between October 2014 and November 2014, he continued to sign in as a visitor," and "Romero did not receive an employee badge until January 2015." CP at 1082. These findings are unchallenged. The trial court also heard testimony and admitted exhibits into evidence regarding Romero's infrequent work hours between October 2014 and November 2014, supporting the trial court's finding that Romero "assisted [Delaney and Klein] with odd jobs" during this period. CP at 1081.

Moreover, Delaney informed Romero that the start date for his contract would be January 1, 2015, due to the lack of revenue before their expected first harvest in January 2015. Although Delaney's subjective understanding is not determinative, the fact that both parties anticipated Secret Gardens would have no revenue until January 2015 is relevant extrinsic evidence supporting lack of a meeting of the minds on this term.

In sum, this evidence about the formation of the contract and the subsequent performance of the parties supports a conclusion that the parties did not agree to any obligation to pay the $150,000 salary rate for work performed before January 1, 2015. We hold that the trial court was correct when it concluded there was no meeting of the minds on the start date for the salary period. Without a meeting of the minds on the essential term on which Romero relies, he cannot prevail on his contract claim.

C.          Severability and Reformation

Romero finally argues that this court should declare paragraph 7 invalid because of its ambiguity, sever it from the contract, and interpret the remainder of the contract to require payment of his salary starting in October 2014. We disagree.

Paragraph 24 of Romero's contract states:

The Employer and the Employee acknowledge that this Agreement is reasonable, valid and enforceable. However, if any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be changed in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

CP at 1103. This provision was included in the initial contract that Delaney drafted, and Romero's attorney did not amend it.

The trial court did not mention this clause in its findings of fact or conclusions of law. Romero argues that the trial court's failure to mention this severability provision in its findings and conclusions was error and asks us to remand to the trial court with instructions to reform paragraph 7 to conclude that Romero's annual salary period began on October 1, 2014. We decline.

The parties to an agreement can agree to sever certain provisions of a contract, rendering those provisions inoperable while upholding the remainder of the contract. *Saletic v. Stamnes*, 51 Wn.2d 696, 699, 321 P.2d 547 (1958). Severance is a remedy regularly applied in the context of mandatory arbitration agreements, for example. *See, e.g.*, *McKee v. AT&T Corp.*, 164 Wn.2d 372, 402, 191 P.3d 845 (2008); *Gandee v. LDL Freedom Enters., Inc.*, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013). Severance can also be a remedy for substantively unconscionable terms. *Gandee*, 176 Wn.2d at 603. However, Romero fails to identify a case where the court severed a provision because it was ambiguous or did not reflect a meeting of the minds.

22

Romero seems to be asking for remand for the trial court to reform the contract to reflect his own desire that the annual salary period commenced on October 1, 2014. Reformation is an equitable remedy used to bring a writing that is materially different from the parties' original agreement into conformity with that agreement. *Denaxas v. Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 669, 63 P.3d 125 (2003). To establish mutual mistake for purposes of reformation, the parties must demonstrate that they possessed the same intentions. *Glepco, LLC v. Reinstra*, 175 Wn. App. 545, 561, 307 P.3d 744 (2013); *see* RESTATEMENT (SECOND) OF CONTRACTS § 155 (AM. LAW INST. 1981) ("The province of reformation is to make a writing express the agreement that the parties intended it should."). Although a court may reform an instrument to accurately state the parties' original intent, it may not invent an agreement the parties did not make. *McKelvie v. Hackney*, 58 Wn.2d 23, 30, 360 P.2d 746 (1961).

Here, severance and reformation are inappropriate remedies because the parties proclaim opposite intentions as to the start of Romero's annual salary period, and for the reasons discussed above, we conclude there was no meeting of the minds with regard to this term.

In sum, the trial court was correct to conclude that paragraph 7 was ambiguous, and it did not reflect a meeting of the minds. Without a meeting of the minds on the essential term on which Romero relies, he cannot prevail on his contract claim. On this basis, we affirm the trial court's dismissal of Romero's contract claim.

### III. WAGE CLAIMS

In his complaint, Romero alleged Delaney and Klein willfully refused to pay him his earned wages after he quit, in violation of RCW 49.48.010 and 49.52.070. In response to Romero's requests for admission, Delaney and Klein admitted they "were preparing to pay Mr. Romero $3,000.00" in wages because they felt they did not have evidence upon which to dispute that

amount of wages being owed to Romero. CP at 1109. But before paying him, "Romero changed his mind and claimed he was owed significantly more than $3,000." *Id.* Romero's attorney demanded over $100,000 in damages. Delaney and Klein "did not pay the earlier demanded amount because it would not resolve this dispute." *Id.*

At trial, neither Delaney nor Klein ever testified that the disputed $3,000 they initially were prepared to pay Romero constituted unpaid wages. The trial court asked Romero's counsel to point to where Delaney and Klein admitted the $3,000 represented unpaid wages. After Romero referenced the discovery responses described above, the trial court clarified:

> The way I'm reading this is it was in terms of settlement. If I read Request for Admissions I and II, they're going to pay him $3,000 in wages to settle it. They felt like they didn't have records to refute the claim, and they were preparing to pay it. It doesn't say anything that they believe the $3,000 represented how many hours he worked.

2 VRP (Aug. 20, 2019) at 356.

In its findings of fact, the trial court did not directly mention the disputed $3,000. However, the trial court found that "[o]ver the course of his employment, Secret Gardens paid Mr. Romero a total of $5,050.00 for his work between October 1, 2014 and June 2, 2015," a finding that is unchallenged. CP at 1082.

In its conclusions of law, the trial court determined that (1) Delaney and Klein "have not committed any wage violations under [c]hapter 49.48 RCW for failing to pay any salary owed," (2) Delaney and Klein "are not liable to Mr. Romero under RCW 49.52.070 because they have not committed any wage violations under [c]hapter 49.48 RCW," and (3) Romero "has not alleged facts or any cause of action for violation of Washington's Minimum Wage Act, [chapter 49.46 RCW]." CP at 1084-85.

Romero argues that the trial court erred in failing to issue findings of fact and conclusions of law addressing Romero's claim that Delaney and Klein willfully withheld $3,000 in wages. We disagree.

"The application of the law to the facts is a question of law that this court reviews de novo." *Viking Bank*, 183 Wn. App. at 712. Thus, we review de novo the trial court's three legal conclusions regarding Romero's wage claim.

A.    RCW 49.48.010 and 49.52.070

Under RCW 49.48.010, when an employee stops working for an employer, whether via voluntary withdrawal or discharge, the employer must pay the employee the wages due to them. RCW 49.48.030 allows for recovery of attorney fees in actions to recover wages.

RCW 49.52.070 offers a remedy against an employer for withholding wages and "states that any employer who violates RCW 49.52.050 shall be liable to the aggrieved employee in a civil action for twice the wages it unlawfully and willfully withheld." *Dice v. City of Montesano*, 131 Wn. App. 675, 687, 128 P.3d 1253 (2006). An employer who "[w]illfully and with intent to deprive the employee of any part of his or her wages" violates RCW 49.52.050(2). A court must determine whether an employer's nonpayment is "willful" to qualify for double damages under RCW 49.52.070. *Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167, 1181 (E.D. Wash. 2016).

The parties do not dispute that Romero was paid a total of $5,050 for his work for Secret Gardens. To the extent there is documentation in the record of hours Romero actually worked, the record does not reflect that he worked more than 40 hours total between October 2014 and June 2015. Because he relies exclusively on the notion that Delaney and Klein agreed they owed him $3,000, Romero has not pointed to any actual evidence in the record that he worked hours for

which he was not paid. Nor has Romero offered any evidence that Delaney and Klein willfully failed to pay him for hours actually worked. Therefore, his wage claim fails.

We hold that the trial court did not err in concluding that Secret Gardens did not commit any wage violations against Romero under RCW 49.48.010, nor was Secret Gardens liable to Romero under RCW 49.52.070.

B.      Minimum Wage Act

Romero argues that the trial court erred in its conclusion of law stating that "[p]laintiff has not alleged facts or any cause of action for violation of Washington's Minimum Wage Act, [chapter 49.46 RCW]." CP at 1085; Br. of Appellant at 45-46. Romero understood this conclusion as the trial court erroneously "making a legal conclusion that one cannot sue for disputed wages unless one also sues for a violation of the [M]inimum Wage Act." Br. of Appellant at 46.

But the trial court was correct that Romero made no mention of Washington's Minimum Wage Act, chapter 49.46 RCW, in his complaint. The trial court's conclusion does not imply that Romero *must* make a minimum wage claim to recover for disputed wages. Romero's wage claim need not depend on the Minimum Wage Act but, nevertheless, for the reasons explained above, his wage claim fails. We hold that substantial evidence supports the trial court's conclusion of law 18.

CONCLUSION

We affirm the trial court's findings of fact and conclusions of law and order and deny Romero's request for attorney fees and costs because he does not prevail.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Sutton, J.

Veljacic, J.