[No. 16419. Department Two. October 25, 1921.]

WILLIAM T. MURRAY *et al., Respondents,* v. THE CITY
OF SPOKANE, *Appellant.*[1]

MUNICIPAL CORPORATIONS (426, 465)—SIDEWALKS—SNOW AND ICE—
NEGLIGENCE—QUESTION FOR JURY. Where for a month or more ice
had remained upon a city sidewalk at a place where a woman slipped
and was injured by a fall, the ice being uneven and rounded upon
the sidewalk which sloped in two directions, the city was liable in
damages, though the water from which the ice was partly formed
came from adjoining premises; nor would the fact that there had
been alternate thawing and freezing relieve the city.

NEW TRIAL (40)—GROUNDS—NEWLY DISCOVERED EVIDENCE. The
denial of a motion for new trial is not an abuse of the court's dis-
cretion, where affidavits alleging newly discovered evidence are con-
tradicted by counter-affidavits.

Appeal from a judgment of the superior court for
Spokane county, Webster, J., entered December 31,
1920, upon the verdict of a jury rendered in favor of
the plaintiffs, in an action for personal injuries sus-
tained through a defective sidewalk. Affirmed.

*J. M. Geraghty* and *Alex M. Winston,* for appellant.
*Robertson, Miller & Robertson,* for respondents.

MITCHELL, J.—Respondents brought this action
against the city of Spokane to recover damages for in-
juries caused Mrs. Murray by falling upon a sidewalk,
and, obtaining a verdict and judgment therefor, the
city has appealed.

Only two contentions are now made by the appellant:
(1) That the evidence is insufficient to show liability on
the part of the city, and (2) that the court abused its
discretion in denying a motion for a new trial.

There is evidence to show that the accident occurred
on January 29, 1917, on a four-foot cement sidewalk in

[1]Reported in 201 Pac. 745.

front of residence property. The sidewalk where the accident occurred was slanting both ways, along the street and from the property line to the street. The surface of the residence lot was some four or four and one-half feet above and drained towards the sidewalk. A walkway from the residence led down to solid cement steps through a retaining wall and thence down to the surface of the sidewalk. The drainage and seepage from the lot were down the steps onto the sidewalk, where much of it froze in the then prevailing cold weather. The weather reports show that, on the day of the accident, the maximum temperature was thirty and the minimum twenty-one; on the day before, the maximum was thirty-four, the minimum was twenty-eight; and two days before, the maximum was forty, the minimum thirty. That is all that was shown by the weather reports concerning the temperature. The residence lot is on the south side of the sidewalk and shelters it from the sun. A number of witnesses testified that ice had been accumulating on the sidewalk, variously estimated at from two to four inches thick next to and near the steps, down to very thin ice six or seven feet down the sidewalk, and also on the outer edge of the sidewalk. One of the witnesses describing it said:

"The sidewalk was covered with thin sheet of ice, and opposite the point where the stairway came down had been—the water was overflowing, it was raised. Where the water had been freezing continually it was raised so it was slightly curved. It was not a flat walk. The hill sloped to the street slope, making a slight slope to the sidewalk. This ice had accumulated in the form of a swelling, to describe it in that way, just a little raise."

There was ample evidence that ice in the same place in substantially the same form had remained there for considerable time, some of the witnesses said for as

much as thirty days, and others fixed a longer period. They testified the place was not free from such ice formation during any portion of that time. At the place nothing had been done for the purpose of safety, although other portions of the sidewalk whereon the ice was evenly distributed had been treated from time to time by scattering ashes or other material thereon. Mrs. Murray was not aware of the condition of the ice at that place, and just a few minutes before she fell, there was a light snow fall, less than one-half inch, that covered the ice. She seemed to have been in no way careless. She wore walking shoes with large heels and also wore storm rubbers.

The conditions described by the evidence, the jury was at liberty to accept, were more than mere slipperiness caused by ice on the sidewalk. There is evidence that the ice at the particular place was uneven and rounded upon the sidewalk that inclined both ways, so as to make it an obstruction and cause it to be unsafe for travel with the exercise of reasonable care. The conditions were such as to fall within the rule laid down in *Calder v. Walla Walla,* 6 Wash. 377, 33 Pac. 1054, which has been reaffirmed in subsequent cases. *Smith v. Spokane,* 16 Wash. 403, 47 Pac. 888; *Piper v. Spokane,* 22 Wash. 147, 60 Pac. 138; and *Wren v. Seattle,* 100 Wash. 67, 170 Pac. 342. Nor does the fact that the water which partly formed the ice came from the adjoining premises and that there may have been alternate thawing and freezing relieve the city in this case, since the testimony shows that for a month or more the ice never entirely melted. *Smith v. Spokane, supra.*

Authorities cited by the appellant have been examined and, in our opinion, are not controlling here. They refer to recurring or recently formed obstacles which were the immediate cause of trouble. The one

case apparently most relied upon, because similar to the case at bar in many of its physical aspects, is *Kortland v. City of Mt. Vernon,* 129 App. Div. 535, 114 N. Y. Supp. 252, the opinion being quoted in full in appellant's brief. In it the court first lays down the general rule as follows:

"The ascertainment of the principles of law which must control the disposition of cases of this character is not difficult. An affirmative duty rests upon a municipality to keep its sidewalks reasonably free from accumulations of ice and snow, and the failure to act, after actual notice, or after time sufficient to justify the inference of knowledge, presents a question of negligence for the jury's consideration. *Keane v. Village of Waterford,* 130 N. Y. 188, 29 N. E. 130; *Beck v. City of Buffalo,* 50 App. Div. 621, 63 N. Y. Supp. 499. If the city allows drains or leaky plumbing to discharge water across the sidewalks, which, freezing, forms ice in cold weather, it is evidence of negligence (*Pymm v. City of N. Y.,* 111 App. Div. 330, 97 N. Y. Supp. 1108); but no duty rests upon property owners or upon the municipality itself to remove snow or ice until it has ceased falling."

And, while the decision was in favor of the city, it was because of the particular facts concerning which, among other things, the opinion says:

"For aught that appears, it may have been that the ice which caused the plaintiff to fall was formed the very day or the day before the accident. Under such circumstances, sufficient time had not elapsed to charge the defendant with negligence."

And again, as to the facts, it reads:

"It seems clear to me therefore that, had this accident happened by the plaintiff slipping upon the old accumulation of snow and ice which had remained there all winter, the defendant would have been liable; but, if she slipped upon the ice formed by the recent freezing of the water discharged from the vacant lot, the defendant would not be liable."

No rule is more firmly established than that a city is not an insurer for the safety of its streets and walkways. But under the facts in this case, the question of the city's negligence and liability was for the jury's consideration, under proper instructions, of which latter no question is raised.

The motion for a new trial presents the question of newly discovered evidence. The situation, in substance, is that, upon the respondents' presenting their claim to the city, its proper officers, upon investigating, inquired of the owner of the residence property as to the condition of the sidewalk at and prior to the date of the accident, and were by him informed that he could not tell, as he had been absent during all of that month of January. At the trial, and before the verdict was returned, the property owner, who under an ordinance of the city is charged with the primary duty of removing snow and ice from the sidewalk, and who claimed to have thought the accident occurred about the last of February instead of the last of January, then told the city's attorney trying the case that he had mistaken, that he was absent during February but at home during January, and that the sidewalk had been kept clear during all of the month of January. In the latter respect there was a corroborating affidavit by his son; and also supporting affidavits by the officers of the city as to the misinformation by the property owner and his correction of it. This was not called to the attention of the trial court until after the verdict. There was a counter affidavit by the respondent Mrs. Murray, undenied categorically, that, during the month of January and prior to the 29th, she noticed that the shades in the house at 201 West 6th street in Spokane (in front of which the accident happened) "appeared to be drawn, down, indicating that the house was vacant and no one living there;" that, on or about February 5 or 6, while

she was in bed suffering from her injuries, the owner of the residence spoken of called to see her, handed her his card (which was attached to her affidavit) stating that he owned the residence property; that he was solicitous about her condition and recovery; that his family was in California for the month and he was staying down town; and that he would like to do anything he could for her. Also there were counter affidavits of persons, other than those who had testified at the trial, that the sidewalk had not been clear of ice and snow during the winter and prior to the accident, and that no sand or ashes had been sprinkled on the sidewalk to lessen its dangerous condition.

Under such circumstances, we are of the opinion the trial court did not abuse its discretion in denying the motion for a new trial.

Affirmed.

PARKER, C. J., TOLMAN, and HOLCOMB, JJ., concur.