[No. 27881. Department Two. June 12, 1940.]

ARVID BERGLUND *et al., Appellants,* v. SPOKANE
COUNTY, *Respondent.*[1]

[1]Reported in 103 P. (2d) 355.

310

*E. R. Spencer* and *Williams, Williams & Cooney*, for appellant.

*Ralph E. Foley* and *Harvey Erickson*, for respondent.

STEINERT, J.—Plaintiffs, husband and wife and their minor daughter, brought suit against Spokane county to recover damages resulting from personal injuries sustained by the daughter in consequence of being struck by an automobile while she was walking on a

county bridge. A demurrer to the complaint was sustained upon the ground that the complaint did not state facts sufficient to constitute a cause of action. Plaintiffs elected to stand upon their pleading, and the court thereupon entered judgment of dismissal, from which plaintiffs appeal.

The pertinent facts alleged in the complaint, to which we must here look, are as follows:

"(4) Many years ago, and about the year 1920, defendant [respondent] for the purpose of providing for pedestrian and vehicular traffic across the Spokane river in Spokane county, near the town of Millwood, constructed what is known as the Argonne bridge in said county, which was more than three hundred feet long, and at all times all travel has been heavy on said bridge, and at all times since has maintained said bridge for such purposes, and said bridge is and was the only way for the inhabitants in the vicinity thereof on each side, to cross the river and to have access to the portions of the county on the other side of said river. Said bridge was so maintained with a width of about twenty feet, and with no place maintained as a footpath or sidewalk or other method by which pedestrians might cross without using the part also used by vehicular travel, and no way was provided by which pedestrians could cross without encountering dangers from being hit by automobiles traveling over said bridge, or way in which pedestrians might avoid vehicles which threatened them, and defendant was negligent in so maintaining said bridge under the conditions herein alleged.

"(5) At all times herein mentioned for a distance of one mile in all directions from said bridge there was a very populous residential district. On the northerly side of said river within said area more than 1500 persons resided and on the southerly side within said area more than 2,000 persons resided, and several schools, churches and public buildings were maintained in said area on the southerly side, and all of said area was embraced in one school district. At all times it has been necessary and required that children should cross said

bridge from one side to the other, and there was no way provided whereby such children could do so without incurring the dangers and risks which were encountered by Ruth Berglund, as hereinafter alleged, and which resulted in her injury, as alleged herein, nor way by which they might escape from any such threatened dangers.

"(6) On or about May 7, 1939, at about the hour of 6 o'clock in the afternoon of said day, said Ruth Berglund was crossing said bridge from the southerly side thereof to the northerly side. At said time the automobile travel over said bridge was very heavy. Said Ruth Berglund was walking on the westerly side of said bridge and came into contact with an automobile going in the same direction, which automobile due to the other traffic was forced to her side of the bridge, and she could not avoid it, but would have had it not been for defendant's negligence as herein alleged. As a result of the facts herein stated, said Ruth Berglund was crushed between said automobile and the side of the bridge, all due to the conditions herein alleged, seriously injuring her as follows: [statement of the injuries]."

"(9) Defendant at all times was aware of the dangerous condition of said bridge for pedestrian travel and with the probability that pedestrians would be injured due to vehicular traffic and of the fact that pedestrians had no way of protecting themselves from being injured by vehicles while they should be crossing said bridge, and particularly that such dangers were present where the bridge was being used by infants. On many occasions over a period of several years prior to the accident herein alleged many pedestrians had narrowly escaped being injured, while crossing said bridge, from the dangers of coming into contact with vehicles, and during such period of time many of such pedestrians had been forced to climb the side railing of the bridge in order to escape such threatening dangers. Over several years prior to such accident the said county had been specifically notified of all of the said conditions and all of the said dangers and the difficulty of pedestrians avoiding injury while cross-

ing said bridge due to the fact that there was no passage-way reserved for pedestrians and no means provided whereby pedestrians might escape from threatened injuries from vehicle traffic."

The question here involved is whether or not, under the facts as alleged, the county may be held liable for negligence in failing to provide or maintain a reasonably safe place for use by pedestrians in crossing the bridge.

 The rule is well-nigh universal in this country that, although a municipality is not an insurer against accident nor a guarantor of the safety of travelers, it is nevertheless obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using such ways in a proper manner and exercising due care for their own safety. 7 McQuillin, Municipal Corporations (2d ed.), 27 *et seq.*, § 2909; 43 C. J. 998, § 1785; 13 R. C. L. 309, § 258.

Our decisions are in accord with that rule, which is applied not only to conventional municipalities, but also to quasi-municipalities, such as counties. *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Einseidler v. Whitman County,* 22 Wash. 388, 60 Pac. 1122; *Larsen v. Sedro-Woolley,* 49 Wash. 134, 94 Pac. 938; *Archibald v. Lincoln County,* 50 Wash. 55, 96 Pac. 831; *Neel v. King County,* 53 Wash. 490, 102 Pac. 396; *Blankenship v. King County,* 68 Wash. 84, 122 Pac. 616, 40 L. R. A. (N. S.) 182; *Leber v. King County,* 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N. S.) 267; *Kelly v. Spokane,* 83 Wash. 55, 145 Pac. 57; *Swain v. Spokane,* 94 Wash. 616, 162 Pac. 991; L. R. A. 1917D, 754; *Murray v. Spokane,* 117 Wash. 401, 201 Pac. 745; *Lewis v. Spokane,* 124 Wash. 684, 215 Pac. 36; *Gabrielsen v. Seattle,* 150 Wash. 157, 272 Pac. 723, 63 A. L. R. 200; 152 Wash. 700, 278 Pac. 1071, 63 A. L. R. 207; *Boggess v. King County,* 150 Wash. 578, 274 Pac. 188; *Slattery v. Seattle,*

169 Wash. 144, 13 P. (2d) 464; *Fritch v. King County,* *ante* p. 87, 102 P. (2d) 249. While in some of the cases just cited the plaintiff was not permitted to recover, it was only because the facts in the particular cases did not warrant recovery under the rule. The rule itself, however, was clearly recognized in all of the cases.

A bridge across a stream is an integral part of the highway along which it is erected. *State v. Vantage Bridge Co.,* 134 Wash. 568, 236 Pac. 280; 4 R. C. L. 195. Hence, the rule previously stated is generally recognized as being similarly applicable to the maintenance of such structures.

"A municipality charged with the duty of maintaining bridges is not bound so to maintain such bridges as to make them absolutely safe; its obligation is merely to exercise ordinary care in keeping the bridges under its control in a safe condition for all usual and ordinary modes of travel and transportation of property over them, with reasonable regard for possible or common dangers that may be expected. Stated in other words, the authority charged with the maintenance and repair of a bridge must use ordinary care to provide against such dangers to the traveling public as may reasonably be anticipated, having due regard to the character of travel, the incidental purposes for which the highway may be lawfully used, and the nature of possible danger at the point in question." 8 Am. Jur. 936, § 38.

To the same effect, see 9 C. J. 474, § 75.

Our decisions likewise apply the rule to the maintenance of bridges. *Zolawenski v. Aberdeen,* 72 Wash. 95, 129 Pac. 1090; *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533; *Davison v. Snohomish County,* 149 Wash. 109, 270 Pac. 422, although in some of the cases recovery was denied upon the ground that the facts did not bring the particular case within the requirements of the rule.

In addition to the common law rule just stated,

which is recognized in this state, there is also a statutory basis for liability on the part of the county. By chapter 187, Laws of 1937, p. 728, Rem. Rev. Stat., Vol. 7A, § 6450-1 [P. C. § 2697-421] *et seq.*, entitled "Washington state aid highway act," counties are authorized and empowered, among other things, to acquire or erect structures necessary for the administration of county roads, and to perform all acts necessary and proper for the administration thereof; to raise revenue for establishing, constructing, altering, improving, and maintaining county roads and bridges, and for other county road purposes; to expend county road funds for the construction of sidewalks and paths for pedestrians, parallel and adjacent to any county road; and to erect and maintain such suitable restrictive and directional signs and markings as may be deemed necessary or may be required by law. By Rem. Rev. Stat., § 951 [P. C. § 8394], counties and other similar public corporations are made liable "for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

The effect of these statutes, when considered together, is to subject counties and other quasi-municipal corporations to the same liability for negligence in the maintenance of its public ways, including bridges, as would, in a similar case, be imposed upon a conventional municipal corporation.

■ Ordinary or reasonable care required by the rule is, as frequently expressed, that care which an ordinarily reasonable person would exercise under the same or similar circumstances. Inherent in this definition is the principle that the care required in a given instance must be commensurate with the risk of harm, or danger, to which others might be exposed by one's conduct. Hence, the determination of whether or not a municipality has exercised reasonable care in the per-

formance of its duty to maintain its public ways in a reasonably safe condition, must in each case necessarily depend upon the surrounding circumstances. *James v. Seattle*, 68 Wash. 359, 123 Pac. 472; *Lewis v. Spokane*, 124 Wash. 684, 215 Pac. 36; *Ferguson v. Yakima*, 139 Wash. 216, 246 Pac. 287, 48 A. L. R. 431; 43 C. J. 1002, § 1786.

With these principles in mind, we refer again to the facts in the case. At the outset, it is to be remembered that we are here concerned with a demurrer to the complaint, and that, for our present purposes, the allegations of appellants' pleading must be considered as though they were established facts.

The complaint alleges that the bridge in question was constructed for the purpose of providing for *pedestrian* and vehicular traffic and was the only way for the inhabitants in the vicinity to gain access from one side of the river to the other. If the bridge was intended and provided for the use of pedestrians, there existed the correlative duty on the part of the county to use reasonable care for their protection. The complaint describes the bridge as being three hundred feet long and twenty feet wide, with no footpath or sidewalk for pedestrians. This situation, of itself, would not necessarily present a dangerous condition if the amount of travel were not great. But, according to the complaint, the travel on the bridge was at all times heavy, and pedestrians were required to mingle with the traffic while crossing the structure, thus continually encountering the danger of being struck by automobiles.

It is further alleged that the neighborhood surrounding the bridge was a populous one, and that many people, including children of school age, were required to make daily use of the structure. The complaint then specifically alleges that, on many occasions prior to this

particular accident, a great number of pedestrians upon the bridge had narrowly escaped being injured by motor vehicles, and that, to avoid injury, they had been forced to climb the side railings. Taking these allegations at their face value, as we must, we cannot avoid the conclusion that the condition was an extremely dangerous one, particularly for children.

The complaint then alleges that the county was well aware of these conditions and, in fact, had received specific notice thereof.

Appellants contend, of course, that the foregoing portions of the complaint sufficiently allege the breach by respondent county of the duty of due care which rested upon it. Respondent's answer to all this, according to the argument in its brief, is not that the rule of reasonable care above stated is to be disregarded, but rather that, notwithstanding the rule, the county was in no event required to construct a sidewalk on the bridge.

It may be conceded, as a general proposition, that cities and other municipalities are not required to build streets, sidewalks, or alleys. They may, in the first instance, leave such ways unopened, without liability for not having improved them. But if they choose to improve them, or in any other manner extend an invitation to the public to walk upon them, they must exercise reasonable care to keep them in a reasonably safe condition for travel. It is the invitation, expressly or impliedly extended to the public, that imposes the obligation. 7 McQuillin, Municipal Corporations (2d ed.), §§ 2924, 2932; *Tait v. King County,* 85 Wash. 491, 148 Pac. 586. Necessarily, the duty extends to so much of a way, in width as well as in length, as the public is invited to use.

The vital question in this case is not whether the county was, in any event, required to build a sidewalk

merely because it had constructed the bridge, but whether, under the circumstances, it exercised the required amount of care to maintain the bridge in a reasonably safe condition for pedestrians, particularly for children, who had been invited to use it. The matter of the necessity for a sidewalk would only arise if the evidence should disclose that, in order to render the bridge reasonably safe for such pedestrians, a sidewalk, or some similar passage reserved for pedestrian traffic, was necessary and reasonably feasible.

In that connection, respondent argues that the situation which existed upon the particular bridge likewise existed in hundreds of other cases where traffic had outgrown bridge and highway facilities; and that, if the county were liable in cases of this kind, progress would be paralyzed, for the county would never be safe in going ahead with road improvements. Along the same line of argument, respondent points out that sidewalks in the rural sections of the county are the exception rather than the rule, and that it was only about two years prior to the time of the accident in question that the county commissioners were first empowered to expend highway funds for the construction of sidewalks.

Giving those arguments their most favorable interpretation, they merely constitute a denial of appellants' contention that the absence of a sidewalk constituted failure to exercise reasonable care. If the case were before us on the merits, those arguments might be relevant and persuasive. Here, however, we are confined to the facts as alleged in the complaint. To sustain respondent's contention, would be to hold, as a matter of law, that, regardless of the conditions existing on the bridge, regardless of the magnitude of the risk to pedestrians, and regardless of how simple and economical the construction of a sidewalk or the reser-

vation of space for pedestrians might be, the county would nevertheless be absolved from any liability for negligence.

It may be a fact that the construction of a sidewalk, or the adoption of some other device for the protection of pedestrians, would be impractical for one reason or another. The financial burden, technical considerations, and other factual circumstances, are all factors to be considered in determining whether or not the county complied with its duty to use reasonable care. But no such reasons appear in the record now before us. At the present state of the proceedings, we have only the uncontradicted allegations of fact showing failure to exercise reasonable care to provide adequate protection for pedestrians.

■■ Respondent further contends that, since it is alleged in the complaint that the automobile which struck the child left its proper lane and collided with the infant pedestrian on the wrong side of the bridge, the injury was not reasonably foreseeable; and that, therefore, the county could not be charged with negligence in failing to make proper provision for persons using the bridge on foot. In other words, respondent contends, in effect, that negligence can be predicated only upon ability to foresee the exact manner in which injury may be sustained. That is not the correct test. The formula applicable to a finding of negligence is whether or not the *general* type of danger involved was foreseeable.

"The courts are perfectly accurate in declaring that there can be no liability where the harm is unforeseeable, if 'foreseeability' refers to the general type of harm sustained. It is literally true that there is no liability for damage that falls entirely outside the general threat of harm which made the conduct of the actor negligent. The sequence of events, of course, need not be foreseeable. The manner in which the risk culmi-

nates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present." Harper on Torts, 14, § 7.

See, also, Restatement of Torts, 1173, § 435.

The general type of harm threatened here was that of personal injury resulting from being struck by a passing automobile. While there may be a greater probability that a pedestrian will be struck by an automobile approaching along the pedestrian's side of the road than by one approaching on the opposite side, it is a well known fact that automobiles do, at times, for one reason or another, forsake their lane of travel and proceed in face of oncoming traffic. The records of every court abound with such instances. It cannot be held, as a matter of law, that such occurrences are so highly extraordinary or improbable as to be wholly beyond the range of expectability.

The general danger, in this case, under the situation which obtained, included not only the risk of harm from automobiles passing along one side of the bridge, but included the risk arising from automobiles approaching along the opposite side and suddenly swerving over to the side along which the pedestrian was proceeding.

▮ Respondent further argues, in this connection, that the driver of the particular automobile must have been operating his machine in an unlawful manner, and that the county's duty does not require it to keep its streets and bridges safe for those who use them unlawfully. There are several answers to this argument. In the first place, we are not here concerned with an injury to the driver of the automobile, but with injuries to the child, who concededly was on her proper

side of the bridge. In the next place, the language of the complaint does not necessarily lead to the conclusion that the driver was guilty of negligence or of violation of the traffic code, at the time in question. Other than the statement that the automobile "was forced to her side of the bridge," the complaint is silent as to the circumstances of the incident. The automobile may have been forced to the opposite side of the bridge by reason of some emergency over which the driver had no control. In the third place, the question is, in any event, one of "foreseeability." If, under the surrounding conditions, the negligence of drivers at the particular point was reasonably to be anticipated, it would be the county's duty to exercise reasonable care to protect the public against the resulting dangers.

The question remains as to whether or not the county's negligence, if any, can be said to be a proximate cause of the injury. Undoubtedly, the active cause of the injuries to the child was the force with which the automobile collided with her. But a contributing cause, under the facts alleged in the complaint, was the failure on the part of the county to exercise reasonable care to provide a place of reasonable safety for pedestrians. While the intervening act of the automobile driver may have been negligent, it would not be a superseding cause with respect to the county's negligence, in the particulars already mentioned, if the county, under the circumstances, should have realized that automobiles and drivers upon the bridge might so act.

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." Restatement of Torts, 1202, § 449.

*Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345. The question of reasonable expectability under the circumstances was one for the jury to decide.

We are convinced that the complaint stated a cause of action, and that the demurrer should have been overruled.

Judgment reversed.

BLAKE, C. J., MILLARD, and JEFFERS, JJ., concur.

[1]Reported in 103 P. (2d) 366.