IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| SIGRID PEREZ, an individual,<br><br>                    Appellant,<br><br>          v.<br><br>CITY OF SEATTLE, a municipal corporation,<br><br>                    Respondent. | No. 85831-9-I<br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Sigrid Perez appeals the trial court's order dismissing her negligence claim at summary judgment. She argues the court erred by concluding the city of Seattle owed her no duty to ensure her safety while crossing a roadway outside the limits of an unmarked crosswalk. We affirm.

FACTS

Perez works as a registered nurse at Swedish First Hill Campus in Seattle. On October 28, 2020, Perez drove to work and parked her car in the staff garage located at 601 Minor Avenue. On her lunch break, Perez returned to her car. She approached the intersection of Cherry Street and Minor Avenue, intending to cross Cherry Street. Perez first stood on Minor Avenue (showed by double red lines in the picture below) to the right of a signpost on the sidewalk and about five feet left of a sidewalk "curb ramp." The signpost held a stop sign. In front of

Perez and to her left was a white "stop line" in the street for oncoming traffic.



As Perez stepped off the curb, she "felt the toes of [her] left foot catch and twist," and she "fell forward to the ground." When Perez sat up, she saw that next to the stop line in the street near the curb where she stepped, there was a raised area around a drain, which was covered with leaves. The picture below shows the curb where Perez stood but from the opposite side of Minor Avenue. The drain where Perez fell is visible where the stop line meets the curb.



Perez suffered a fractured left ankle as a result of the fall.

On September 30, 2022, Perez sued the city of Seattle (City) for negligent

"construction, design, maintenance and repair of public sidewalks, walkways, and/or pedestrian rights-of-way." The City moved for summary judgment, arguing that Perez crossed the street outside of an unmarked crosswalk. The City asserted that it has no duty to maintain a safe roadway for pedestrians crossing outside a crosswalk.

In support of the City's motion, Seattle Department of Transportation Chief Transportation Safety Officer and traffic engineer Venu Nemani filed a declaration and attached diagrams, like the one below, showing the legal statutory limits of the unmarked crosswalk in blue. Nemani explained that

> the unmarked crosswalk area across the east leg of Cherry Street at Minor Avenue consists of the portion of the roadway between the intersection area at Minor Avenue and the prolongation or connection of the easternmost edge of the sidewalk line.[1]

Nemani marked Perez's travel path, or "inlet" over the drain, in red, which was 10 feet outside the legal crosswalk.



---

[1] "Intersection area" means "the area embraced within the prolongation or connection of the lateral curb lines." RCW 46.04.220(1). Under RCW 46.04.160, "crosswalk" means "the portion of the roadway between the intersection area and a prolongation or connection of the farthest sidewalk line."

In response, Perez did not dispute that she crossed outside the limits of the unmarked crosswalk. Instead, she argued that the area where she was walking at the time of her fall "was a foreseeable pedestrian path which was adjacent to a dangerous condition." She offered the "Human Factors and Safety Report" of Levi Dixon, a certified tribometrist,[2] human factors engineer, and safety professional. Dixon opined that Perez "was walking in a foreseeable pedestrian pathway" at the time of the incident, and that the "overall condition of the walkway was inconsistent with basic walkway safety guidelines and standards," which caused her fall and injuries.

The trial court heard the City's motion on September 1, 2023. The court concluded that the City "only owes a duty to maintain a street for pedestrian use in the crosswalk," and that the duty "only extends to the confines of the crosswalk and not on any other part of the street." On September 6, the court issued an order granting the City's motion for summary judgment.

Perez appeals.

ANALYSIS

Perez argues the trial court erred by concluding the City had no duty to maintain a safe roadway for pedestrians outside the parameters of a crosswalk. We disagree.

We review an order on summary judgment de novo, engaging in the same inquiry as the trial court. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). Summary judgment is appropriate only when "there is no genuine

---

[2] A "tribometrist" is "one that measures the slip resistance of walking surfaces."

issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Ellis*, 142 Wn.2d at 458. We will grant summary judgment only if, from all the evidence, reasonable persons could reach but one conclusion. *Id.*

A defendant can prevail on a motion for summary judgment by challenging the plaintiff's ability to establish an essential element of a cause of action. *See Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The defendant bears the initial burden of showing a lack of evidence. *Id.* at 225 n.1. The burden then shifts to the plaintiff to establish the essential elements of their claim. *Id.* at 225. If the plaintiff fails to do so, the defendant is entitled to summary judgment. *Id.*

To establish negligence, a plaintiff must show (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is proper if a plaintiff cannot meet any one of these elements. *Id.* at 552-53. The threshold question is whether the defendant owes a duty of care to the injured plaintiff. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998). The existence of a legal duty is a question of law, but the scope of that duty is a question of fact. *McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752, 762, 344 P.3d 661 (2015).

A municipality owes a duty of care to all travelers to maintain its roadways in a condition that is reasonably safe for ordinary travel. *Xiao Ping Chen v. City*

*of Seattle*, 153 Wn. App. 890, 900, 223 P.3d 1230 (2009). This includes the duty to "eliminate an inherently dangerous or misleading condition." *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 788, 108 P.3d 1220 (2005). By establishing certain presumptions in favor of pedestrians, the law directs them to use marked or unmarked crosswalks. *Xiao Ping Chen*, 153 Wn. App. at 906; see RCW 46.61.240(1) (pedestrians at any point other than within a marked crosswalk or an unmarked crosswalk at an intersection must yield the right-of-way to vehicles). As a result, a city has a corresponding duty to maintain its crosswalks "in a manner that is reasonably safe for ordinary travel in light of the circumstances at each particular crosswalk." *Xiao Ping Chen*, 153 Wn. App. at 907. But cities generally have no duty to ensure that pedestrians can safely cross the street outside the boundaries of a crosswalk. *Hansen v. Wash. Natural Gas Co.*, 95 Wn.2d 773, 778, 632 P.2d 504 (1981).

Here, there is no dispute that Perez fell on a leaf covered, raised drain located 10 feet outside the boundaries of an unmarked crosswalk. Because Perez was walking in an area outside the limits of the unmarked crosswalk, the City had no duty to ensure the area was safe for her.

Nonetheless, Perez cites *Berglund v. Spokane County*, 4 Wn.2d 309, 103 P.2d 355 (1940), to argue the City had a duty to maintain the area safe for pedestrian travel because it is foreseeable that pedestrians would cross there. In *Berglund*, Spokane County built a bridge across the Spokane River, which served as the only way for cars and pedestrians to cross the river in the area. *Id.* at 311. The bridge had no footpath, sidewalk, or other means for pedestrians to

6

cross safely. *Id.* A car struck the plaintiff while she walked across the bridge, and she sued the county for negligence. *Id.* at 310-11.

Our Supreme Court determined that "whether or not a municipality has exercised reasonable care in the performance of its duty to maintain its public ways in a reasonably safe condition must in each case necessarily depend upon the surrounding circumstances." *Berglund*, 4 Wn.2d at 315-16. And the circumstances in *Berglund* showed that "the bridge in question was constructed for the purpose of providing for pedestrian and vehicular traffic and was the only way for the inhabitants in the vicinity to gain access from one side of the river to the other." *Id.* at 316. As a result, the county owed a duty to ensure the bridge was reasonably safe for pedestrians it invited to use it. *Id.* at 317.

This case is unlike *Berglund*. Here, the City did not construct the area Perez accessed for pedestrian use. Nor did it invite pedestrians to use it.

Still, Perez argues the circumstances here show the City owed a duty to pedestrians in the area where she crossed the street. She points to Dixon's opinion that "it is foreseeable that pedestrians will not even know the technical boundary of the unmarked crosswalk, much less that they will always stay within the confines of it." And Dixon provides several pictures of the same area where Perez fell, showing pedestrians "routinely" crossing the street outside the boundaries of the unmarked crosswalk. But our Supreme Court has declined to broaden a municipality's duty "to all foreseeable travelers." *Hansen*, 95 Wn.2d at

777.[3]  And while Perez argues the entrance of the unmarked crosswalk is difficult to discover, she does not show that the circumstances render the legal crosswalk inherently dangerous or misleading.

Because Perez fell while walking in an area outside the limits of the unmarked crosswalk, the City owed her no duty to ensure her safety.  As a result, we affirm the trial court's order granting summary judgment for the City.[4]

_Brennan, J_

WE CONCUR:

_Hazelrigg, A.C.J._          _Smith, C.J._

---

[3] Perez tries to distinguish *Hansen* and other cases reaching the same conclusion, asserting that those cases involved jaywalkers further removed from marked crosswalks.  But she cites no authority in support of her argument that a city's duty to pedestrians rests on how far they may travel outside a crosswalk.  When a party fails to cite to relevant authority, we presume they found none.  *Edmonds Shopping Ctr. Assocs. v. City of Edmonds*, 117 Wn. App. 344, 353, 71 P.3d 233 (2003).  And whether a crosswalk is marked or unmarked does not change the analysis.  *See Coleman v. Altman*, 7 Wn. App. 80, 82, 497 P.2d 1338 (1972) (in the absence of a marked crosswalk, the relative rights and duties of drivers and pedestrians will be determined " 'as regards the unmarked crosswalk' ").

[4] The City asks for "reasonable attorney fees and costs incurred in responding to this appeal under RAP 18.1."  That rule authorizes an award of fees and costs if applicable law grants a party the right to recover them.  RAP 18.1(a).  But the City does not identify the applicable law granting it the right to recover attorney fees and costs.  As a result, we decline to award them.